## VAN ARSDALE & CO. v. HOWARD.

1. Can a mortgage, which has been referred to, and admitted by the mortgagor and mortgagee, in the course of their testimony, be admitted as evidence, without having been proved by a subscribing witness, notwithstanding the objection of the plaintiff, who is not a party to the mortgage ?

2. The concealment, or non disclosure of facts, to amount to a fraud, must be of those facts and circumstances, which one party is under some legal or moral obligation to communicate to the other; and which the latter has a right, not merely *in foro conscientiæ*, but *juris et de jure* to know.

3. An omission to communicate, or a concealment of facts, in such cases, should be attended by some evidence of trust or confidence, reposed by one party in the other, to constitute a fraud.

This is an action of assumpsit, brought by the plaintiffs against the defendant, on a promissory note, given by one A. G. Marshall, and the defendant, as his security, to the plaintiffs for the payment of twenty three hundred and eleven dollars 56-100, negotiable and payable at the Bank of Columbus. The action was commenced in the county court of Russell, but transferred to the circuit court, by consent. The declaration is in the usual form. The defendant relied, for his defence, on six pleas. On the first, being *non assumpsit*, issue was taken; and also on the 4th, which alleged that the note was given without any consideration good and sufficient in law. To all the other pleas, the plaintiffs, by their counsel, demurred. The court sustained the demurrer to the sixth plea, but overruled those to the 2d, 3d, and 5th pleas; upon which issues were afterwards taken, and 'the case submitted to a jury.

Upon the trial of the cause, a bill of exceptions was taken, setting forth that evidence was given, going to prove, that the defendant was security, in the note sued on, for said Marshall—that Marshall in the early part of the year 1838, bought a stock of goods of one Sorsby, and had given one Preston as his endorser for the purchase, amounting to about ten thousand dollars worth: that, to secure said Preston on his endorsement, said Marshall had executed to him a mortgage on his said stock of goods, and the profits and accounts to arise from the sale thereof, which was re-

corded in Muscogee county, Georgia, where said Preston and Marshall both resided, and where the contract was made ; but it was not shewn that by the law of Georgia, such an instrument was required to be recorded.

It was further proved, that afterwards the said Marshall obtained a letter of introduction, or credit, from said Preston, directed to the plaintiffs in the city of New-York ; and, upon the faith of said letter, purchased an additional stock of goods from said plaintiffs, and brought them to the said county of Muscogee, Georgia, and there placed among the goods originally purchased by him of the said Sorsby, and upon which said Preston held said mortgage.

It was also proved, that after the purchase of said goods in New York from said plaintiffs, by said Marshall, said plaintiffs sent out to Muscogee county, Georgia, to the said Preston, for settlement, two notes on said Marshall, one past due, and the other not then due—with a request that said Preston would settle said notes with said Marshall ; and it was likewise proved that said Preston did agree with said Marshall, to take from him a note with security, and that he should pay the note, thus taken, when it fell due, with other notes.

It was further proven, that, a short time after this agreement was thus entered into, an agent of the plaintiffs, from the city of New York, came into the county of Muscogee, Georgia, and, while there, Marshall obtained the signature of said defendant to said note, here sued on ; and that said Preston also knew, that said defendant was about to sign said note for said Marshall, and permitted said defendant to sign it, without letting him know that the goods then in possession of said Marshall, had been, by said Marshall, previously mortgaged to said Preston.

It was also proved, that, in a short time after the execution of said note by said defendant, said Marshall turned over his entire stock of goods, amounting to about fourteen thousand dollars, to said Preston ; and it was further proved that, after this, said Preston had the note of said Marshall and defendant credited with $265, although, at the time it was executed, it was delivered to the agent of the plaintiffs then in Columbus, Georgia, by him carried to New-York, and subsequently remitted to the county of Muscogee, Georgia, for collection.

The defendant then introduced the mortgage from Marshall to Preston, which bore on it the attestation of two witnesses. The plaintiffs objected, generally, to its being read, but did not state their ground of objection; but the court permitted it to be read, it having been spoken of and admitted by both the mortgagor and mortgagee in their testimony; to which decision the plaintiffs excepted.

Upon these facts, the court charged the jury, that, if they believed from the evidence, that Preston was the agent of the plaintiffs, to secure the notes due them by Marshall; and took the note sued on, with the defendant as security; and, at the time had a mortgage on all the effects of Marshall to secure himself personally; and did not inform the defendant of the existence of said mortgage; and that said defendant at the time he signed said note for said Marshall, was not in any manner notified of said mortgage, that then it was a concealment which amounted to a fraud on the defendant, and they must find for the defendant; to which charge the plaintiffs excepted, &c.

There was a verdict for the defendant; and, from the judgment rendered thereon, the plaintiffs have brought the case here by writ of error; and have made the following assignment:

1. The court erred in overruling the demurrer to the second plea.

2. The court erred in overruling the demurrer to the third plea.

3. The court erred in overruling the demurrer to the fifth plea.

4. The court erred in the matters set forth in the bill of exceptions.

HEYDENFELDT, for the plaintiffs in error.
BELSER & HARRIS, *contra*.

CLAY, J.—The principal questions presented by this record, are believed to arise out of the bill of exceptions; because that sets forth the facts of the case, upon which, with the principles here to be laid down, the fate of the cause must ultimately be decided. Hence, although embraced by the last assignment of errors, they will be first considered.

The first point raised upon the bill of exceptions, is, whether the court erred in suffering to go to the jury, as evidence, the mort-gage from Marshall, the principal in the note sued on, to Preston, when it bore the attestation of two witnesses, neither of whom had been introduced, or given evidence of its execution—nor had the absence of either been accounted for.   To sustain the opinion of the court admitting it, the counsel for the defendant in error re-lies on the ground, that the plaintiffs below objected generally, only, to its being read, without stating their grounds of objection, and that it had been spoken of and admitted, by both the mortga-gor and the mortgagee.   We do not think either of those grounds sufficient to justify its admission.   It was not the ground of the action, the plaintiffs were not parties to it, nor had it been set out in the pleadings so specifically, as to have called on them to admit, or deny its execution.   The fact of its having been spoken of and admitted by the mortgagor and mortgagee, (neither of whom was a party) in the course of the trial, was not a substitute for the evidence of a subscribing witness, and could not bind the plain-tiffs, who were not parties to it, and made no admissions in rela-tion to it.   The first step, to be taken by a party, who introduces an instrument of writing, collaterally, is to prove its execution by the subscribing witness, if it have one, and, if not, to prove the hand writings of the individual or individuals, by whom it was executed, or in some other legal mode establish its genuineness. Until he offers legal proof of its execution, it is enough to object generally—he has not placed himself in a position to claim any other objection; for, until then, he has not proved even the legal existence of such a contract.   This general rule is held to be in-dispensable, by the highest authority, even when it was proved that the obligor had admitted that he executed the bond; and though the admission was made in an answer to a bill of discov-ery.   [See Greenleaf on Evidence, 604, § 569, and the authori-ties there cited; and the case of Bennett v. Robinson's adm'r, 3 S. & P. 227.]   It is true this rule has some exceptions, but the facts of this case do not bring it within any one of them.   And, if the *obligor* can make the objection, because a fact may be known to the witness, which may not be known to him; and be-, cause he has a right to avail himself of all the knowledge of the subscribing witness relative to the transaction; how much more forcibly do the reasons apply in favor of one who is not a party to

the instrument, has no knowledge of it, and has made no admissions concerning it? In the case of Falls & Caldwell v. Gaither, [9 Porter, 605,] this court seems to have relaxed the rule, so far as to admit the testimony of an agent, by whom a written contract was executed—although the subscribing witness might have been within the reach of the process of the court. It seems to me, that this was establishing a new exception to the general rule; and, as an agent may be presumed free from the interest, which must attach in the case of the parties to the contract, I am not now disposed to disturb the point. But, I cannot agree, where a paper is introduced collaterally, to affect the interest of one who is not a party to it, to dispense with the knowledge of all the circumstances attending its execution, which the subscribing witness may be supposed to possess. I, therefore, conclude, the court erred in admitting the mortgage as evidence, under the circumstances set forth in the bill of exceptions.

2. The next question arising on the bill of exceptions is, whether the court erred in charging the jury upon the facts as stated? The charge was, that if the jury believed, from the evidence, that Preston was the agent of the plaintiffs, to secure the notes due them by Marshall; and took the note sued on, with the defendant as security, at the time, having a mortgage on the effects of Marshall to secure himself personally, and did not inform the defendant of the existence of that mortgage; and that defendant at the time he signed the note for Marshall was not in any manner notified of said mortgage; that, then, it was a *concealment*, which amounted to a fraud on the defendant, and they must find in his favor.

The broad principle assumed in this charge is, in a few words, that when a man is taking a note, or obligation with security, and happens to know circumstances unfavorable to the credit, solvency, or responsibility of the principal, which are unknown to the person becoming security, and does not communicate, or make them known to him, that the omission to make them known is a fraud; which vitiates and destroys the binding efficacy of the contract. This would be carrying the doctrine very far, and before it is adopted as the law of the land, ought to be well understood in its practical results, as well as sustained by authority. Is such a principle recognized, or acted upon, generally, by men of the most scrupulous honor and honesty? Why does one man

usually require security of another? It is because he has not sufficient confidence in, or knowledge of, the solvency, or ability of the one, who is to undertake the payment of the debt, or performance of the duty. It would seem that the very requirement of security, implied this want of confidence, or knowledge—and that it would admonish one, not better acquainted with the circumstances of the principal, to be upon his guard—and it is no doubt often the case, that the security agrees to be bound, because he knows the situation of his principal better than the obligee or payee. It is not assumed as a fact, on which the charge is founded, that either the plaintiffs, or Preston, as their agent, represented the property of Marshall, the principal, to be free from incumbrance; nor that it was through the agency of Preston, the defendant bound himself as security; on the contrary, in a foregoing part of the bill of exceptions, it is stated that " Marshall obtained the signature of the defendant to the note, on which said defendant has been sued by plaintiffs, and that Preston also knew that said defendant was about to sign said note for Marshall, and did permit said defendant to sign it, without letting him know that the goods then in possession of said Marshall had, previously by said Marshall, been mortgaged to said Preston." This is the state of facts, to which the charge of the court must be understood as having reference. It is, in effect, merely that Marshall, the principal himself, obtained the defendant's signature as security; and that Preston *permitted* him to sign the note, without telling him, that he (Preston) had a mortgage on the goods of the principal. On what principal of law was Preston bound to interpose and make known such a fact? We cannot believe such an one can be found, or that Preston was under even a moral obligation, so to interfer.

But, the question is, would such concealment, as that disclosed by the evidence amount to a fraud, in legal contemplation. It is true, fraud, in its general acceptation may be defined the *misrepresentation* or *concealment* of a material fact. But, " it is extremely difficult to advance any general principle, or elementary doctrine on this subject. Cases of fraud depend peculiarly on the particular facts which have occurred, the relative situation of the parties, and their means of information." [See Chitty on Con. 3d Am. ed. 223.) It may be laid down, that to constitute fraud, there must be a misrepresentation, or concealment of a

fact, peculiarly within the knowledge of the party, who does either—or some device must be used, naturally calculated to lull the suspicions of a careful man, and induce him to forego enquiry into a matter upon which the other party has information, although such information be not exclusively within his reach. [Id. 223, 4.]

The concealment, or non-disclosure of facts, which amount to a fraud, must be " of those facts and circumstances, which one party is under some legal, or moral obligation to communicate to the other; and which the latter has a right, not merely in *foro conscientiae*, but *juris et dejure*, to know." [1 Story's Com. on Eq. P. 216, § 207.] In treating further on the subject, the same learned author, remarks, " for many most material facts may be unknown to one party, and known to the other, and *not equally accessible*, or, at the moment, within the reach of both; and yet contracts, founded on such ignorance on one side, and knowledge on the other, may be completely obligatory. Thus, if one party has actual knowledge of an event or fact, from private sources, not then known to the other party, from whom he purchases goods, and which knowledge would materially enhance the price of the goods, or change the intention of the party, as to the sale; the contract of sale of the goods will nevertheless be valid." [Id. 217, 218.]

In the case of Laidlaw v. Organ, [2 Wheat. 195,] where this question substantially came up, Chief Justice Marshall, in delivering the opinion of the court, said: " The question in this case is, whether the intelligence of extrinsic circumstances, which might influence the price of the commodity, and *which was exclusively within the knowledge of the vendee*, ought to have been communicated by him to the vendor? The court is of opinion, that he was not bound to communicate it. It would be difficult to circumscribe the doctrine within proper limits, when the means of intelligence are equally accessible to both parties. But, at the same time, each party must take care not to say, or do any thing tending to impose on the other."

It may be further remarked, that to constitute a fraud, an omission to communicate, or a concealment of facts in such cases, should at least be attended by evidence of some trust, or confidence, reposed by one party in the other. The contrary doctrine, to that here laid down, would be extremely inconvenient, and would open an interminable field of litigation. In a large portion

of the contracts made between man and man, one of the parties may be possessed of more information than the other, or that which may be exclusively within his knowledge—though accessible to the other, if proper vigilance be exercised. To authorise an action for damages, or a bill in chancery to rescind, every such contract, would lead to endless litigation.

These views result in the conclusion, that the charge of the court below to the jury, was erroneous.

3. The application of the principles laid down to the second and fifth pleas, relied on by the defendant, will shew that they were both defective. Neither of them sets forth such facts, as amount to fraud. Consequently, the court erred in overruling the demurrers to those pleas.

4. But the third plea sets forth, in substance, that the plaintiffs knew the property of said Marshall to be encumbered, and fraudulently represented to the defendant, that Marshall was to have the privilege of discharging the note sued upon, by the proceeds of the property then in his possession; and that the plaintiffs did not give said Marshall the privilege of so discharging said note; but that their agent has appropriated said property, then in said Marshall's possession, to the payment of other debts, and that said Marshall is now insolvent. Here is an allegation of a misrepresentation, knowingly made by the plaintiffs to the defendant, calculated to mislead and deceive the latter; a misrepresentation " calculated to lull the suspicions of a careful man, and induce him to forego , enquiry into the matter," and constitutes a legal fraud. We, therefore, conclude, the court below did not err in overruling the demurrer to the third plea.

But, for the errors arising upon the bill of exceptions, and in overruling the demurrers to the second and fifth pleas; let the judgment be reversed, and the cause remanded.

COLLIER, C. J.—I differed with my brothers in Falls and Caldwell v. Gaither, in what I considered a departure from the ancient and strict rule, which requires proof by the attesting witness, of the execution of the deed, where his evidence is attainable. That case determines that an agent is competent to prove that a writing was executed by him, under authority from, and on behalf of his principal. Why the evidence of the agent should be admissible, and the principal incompetent in a case in which

the latter has no interest, I am unable to perceive. I am perfectly willing to regard the case cited, as authoritative, and if in the present case, the mortgagor testified to the execution of the mortgage, or admitted its legal existence, we cannot in my judgment, in the absence of all interest disregard his evidence. Such proof comes within the principle we have recognized. I have merely added these few remarks, to call attention to the fact, that what my brother CLAY, has said on this point, is not intended to conclude us if the question should hereafter arise.