# Griel *v.* Lomax.

*Action for Money Paid under Special Contract.*

1. *Assignment of executory contract of purchase; defect of title, as failure of consideration.*—On a sale and transfer of a purchaser's interest in a tract of land under an executory contract, the transferree can not recover back the money paid, on the ground that the transferror had no title or interest which he could sell or assign, because his contract with the vendor and owner of the land was by parol merely, especially where it appears that the vendor has executed and deposited a deed in *escrow*, to be delivered to the purchaser on his compliance with the stipulations of the contract.

[Griel v. Lomax.]

2. *Same; fraudulent concealment or misrepresentation.*—If the transferror, in the negotiations between him and the transferree, fraudulently misrepresented or concealed a material fact, which was an inducement to the purchase, and on which the transferree relied, this would give the latter a right to repudiate the contract, and recover back the money paid under it; but mere silence is not fraud, unless the seller suppressed a material fact within his knowledge, which honesty and good faith required him to disclose.

3. *Same; case at bar.*—The transferror being one of three joint purchasers of a tract of land under an executory parol contract of sale, which required them to pay a part of the price in cash, and to give their joint notes for the residue; if he stated to the transferree that he and his co-purchasers had contracted to buy the land, were to pay a part of the price in cash, and to give their notes for the balance, this would import that the notes were to be joint, and his failure to state the fact would not be a fraudulent concealment; but, if he stated that separate notes were to be given, this would be a material misrepresentation, and would avoid the contract, if the transferree relied on it, was justified in relying on it, and was thereby injured, although the transferror did not know at the time that his statement was untrue.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Tennent Lomax, P. C. Massie, and T. S. Sayre, against Jacob Griel, to recover $100, with interest, which plaintiffs had paid to defendant on a purchase of his interest in a lot or parcel of land in the town of Sheffield, and was commenced on the 21st June, 1887. The contract between the parties was reduced to writing, dated at Montgomery, Jan. 6th, 1887, signed by said Griel *only*, and in these words: "For and in consideration of $100 to me in hand paid, by Patrick Massie, T. Lomax, and T. S. Sayre, I, Jacob Griel, do hereby transfer and assign unto said Massie, Lomax and Sayre all my right, title and interest, in and to that certain property recently contracted for by said Jacob Griel, C. L. Matthews, and J. C. O'Connell, to be conveyed by A. J. Moses, situated on Raleigh Avenue in the city of Sheffield, Colbert county, Alabama; and *we* ( ? ) agree to assume all the liabilities of said Griel in and about said purchase." The complaint, as amended, contained the common counts for money paid, and money had and received; and special counts on the contract, alleging failure of consideration, fraudulent concealment, and fraudulent misrepresentation of material facts, on the part of the defendant. The cause was tried on issue joined, but the record does not show what pleas were filed.

It was proved on the trial, as appears from the bill of exceptions, that in December, 1886, the defendant (Griel), with said Matthews and O'Connell, bought from A. T. Moses

his interest in the lot or tract of land mentioned in the written instrument, which Moses had bought from the Sheffield Land Company; that, by the terms of the contract between them and Moses, which was not reduced to writing, one-third of the purchase-money was to be paid in cash, and their joint notes given for the balance; that conveyances were to be executed when Moses had procured a deed from his vendor, the Sheffield Land Company, or he was to procure conveyances to them directly from the Sheffield Land Company; that Moses afterwards procured deeds from the Sheffield Land Company, and sent them to Moses Bros. at Montgomery, to be delivered to Griel, Matthews and O'Connell, on their compliance with the stipulations of the contract with him; that Griel refused to have anything to do with the matter, as he had sold out his interest to the plaintiffs, and Matthews and O'Connell refused to complete the contract with plaintiffs instead of Griel; that the deeds were therefore never delivered, and the contract of sale never consummated. The plaintiffs insisted, (1) that there was a total failure of the consideration of their contract with Griel, because he had no interest which was capable of sale or assignment, and because, by the terms of the agreement between him, Matthews and O'Connell, he could not sell or transfer his interest in their contract with Moses without their consent; (2) that defendant fraudulently concealed from them the fact that he was to give his notes, jointly with Matthews and O'Connell, for the purchase-money not paid in cash; (3) that he fraudulently represented to them that it would only be necessary for them, in order to get a title to the land, to make the cash payment, and to give their individual notes for the balance of the purchase-money; and they adduced evidence tending to prove these representations. Several exceptions were reserved by the defendant to the rulings of the court on the admissibility of evidence, but these rulings require no special notice.

The court charged the jury, *ex mero motu*, as follows: "If, at the time of the sale, plaintiffs desired to purchase an interest in land, and defendant knew this, and represented to them that he had an interest in land, and offered to sell them an interest in land, and withheld from them the facts, if the evidence shows they are facts, that the only interest he had in the land was by virtue of a parol contract of purchase, and that he had never been put in possession, and had paid no part of the purchase-money, and had a right to with-

[Griel v. Lomax.]

draw from the trade if a profit was not realized in sixty days; and if plaintiffs relied upon his representations, and were thereby induced to make the trade with him, then this would be a fraud on them, and would give them a right to recover." (2) "It is not always necessary for a man to intend to cheat, or swindle, or deceive, in order to be guilty of a legal fraud; he might sometimes commit a legal fraud, without a dishonest intention."

The defendant excepted to each of these charges, and also to the following charges, which were given by the court on request of the plaintiffs:

(1.) "If the jury believe from the evidence that all the facts concerning the contract between Griel, Matthews and O'Connell, for the Sheffield property, were known to Griel, and that plaintiffs knew nothing about them except what Griel told them, and that their ignorance was known to Griel, and that the trade between them was based entirely on what Griel told them; then plaintiffs had the right to rely on the statement of Griel." (2.) "If the jury believe from the evidence that the defendant represented to plaintiffs that they would have to pay in cash, and with their notes, one-third of the sum agreed to be paid by Griel, Matthews and O'Connell for the lots contracted for, and that this representation was false, and that it was a misrepresentation of a material fact relating directly to the matter of the contract between him and plaintiffs, and that plaintiffs had a right to rely, and did rely upon the representation; then they must find for the plaintiffs, even though they may believe that the defendant misrepresented the matter innocently." (3.) "If the jury believe from the evidence that plaintiffs' trade with defendant was based entirely on defendant's statement to them, and that defendant knew this; then it was his duty to inform plaintiffs of all material facts concerning the transaction."

The defendant requested the following charge in writing, and excepted to its refusal: "The law raises the presumption, that when defendant, Matthews and O'Connell jointly purchased the lots from Moses, they were to execute their joint notes for the deferred payments, and the plaintiffs were bound to know this presumption of law."

The charges given by the court, the refusal of the charges asked, and the rulings on evidence, are assigned as error.

ARRINGTON & GRAHAM, for the appellant, argued all the assignments of error, and cited the following authorities:

[Griel v. Lomax.]

*Griel v. Lomax*, 86 Ala. 132; *Jordan & Son v. Pickett*, 78 Ala. 331; *Munroe v. Pritchett*, 16 Ala. 790; *Juzan v. Toulmin*, 9 Ala. 662; *Wilcox v. Henderson*, 64 Ala. 535; *Tabor v. Peters*, 74 Ala. 90.

L. C. SMITH, and GEO. M. MARKS, *contra.*—(1.) The contract was without consideration, because the subject-matter had no legal existence, and Griel had no interest which was the subject of sale or assignment.—*Brewton v. Watson*, 67 Ala. 172; *Cullum v. Br. Bank*, 4 Ala. 28; *Flinn v. Barber*, 64 Ala. 193; 2 Add. Contracts, § 514; 1 Wait's A. & D. 111, § 22. (2.) On the sale or or assignment of a mere *chose* in action, there is an implied warranty of its validity, and of the right to sell; and if it is void, or incapable of enforcement—that is, if the purchaser gets nothing—he may recover back the purchase-money paid.—Benj. Sales, §§ 619, 924, 955; *Wood v. Sheldon*, 42 N. J. Law, 421; *Thrall v. Newell*, 19 Vt. 208; 2 Add. Contracts, § 643; Com. Digest, *Action on the Case*, A. 8; *Medina v. Stoughton*, 1 Ld. Raym. 593; 3 Term R. 58; 1 Bac. Abr. 113; Co. Litt. 384 *a*; *Conturier v. Hastie*, 5 H. L. Cases, 673; 1 Chitty's Contr., 11th Amer. Ed. 517, notes. (3.) The evidence shows a concealment of material facts by the defendant, and a misrepresentation of material facts; either of which gave plaintiffs a right to avoid the contract, and to recover the money paid under it.—*Munroe v. Pritchett*, 16 Ala. 785; *Davis v. Betz*, 66 Ala. 210; *Tabor v. Peters*, 74 Ala. 90.

SOMERVILLE, J.—This case was before us on a former appeal, when we fully discussed some of the most important principles involved.—*Griel v. Lomax*, 86 Ala. 132. We then stated the rule to be, in cases where the vendor of any interest in land had no title, that the purchaser in an executed sale had no remedy, upon such failure of title, unless he had protected himself by taking proper covenants for title, or unless there was fraud, either by misrepresentation or concealment, in the sale.

It is still insisted that Griel had no interest whatever in the land he sold to the plaintiffs, and that there was a total failure of consideration—that he acquired a hundred dollars of the plaintiffs' money for nothing, and for this reason the money *ex æquo et bono* belongs to the plaintiffs, and they ought to recover it back in this action. We can not perceive that this changes the aspect of the question, or

rescues the case from the principle declared on the former appeal. But it is not true, on the facts set out in the bill of exceptions, that Griel had no valuable interest in the land in question. Moses had agreed to sell the land to Griel, Matthews and O'Connell, by delivering a deed to them from the Sheffield Land Company; the agreement, it is true, being only verbal, so that it was voidable under the statute of frauds, and its enforcement could have been resisted by either party by interposition of the statute set up by special plea. But Moses made no effort to avoid the agreement on his part. On the contrary, he procured the deed to be signed in proper form, and made every suitable effort to deliver it, as he had stipulated to do, by depositing the papers with Moses Bros., to be delivered to the grantees upon performance by them of their part of the contract. We held in *Jenkins v. Harrison*, 66 Ala. 345, that such a delivery of a deed *in escrow* constituted a note or memorandum of the contract, which·would fully satisfy the statute of frauds; and this ruling was followed in *Johnston v. Jones*, 85 Ala. 286. On such a state of facts, a bill for specific performance would lie by the grantees in the deed—Griel and his associates. Griel, therefore, possessed a valuable interest capable of being transferred, and sufficient to constitute a legal consideration for a promise to pay money. In fact, the true consideration of the contract, in another phase, would seem to be nothing more than the transfer to the plaintiffs of Griel's right, such as it was, under the contract with Moses—the placing of the plaintiffs, so to speak, "in his shoes;" an agreement which would be valid unless the vendor, Griel, was guilty of some fraudulent misrepresentation or concealment in the trade, such as would vitiate it. 2 Add. Contr. (Morgan's Ed.) § 643; *Chapman v. Speller*, 14 Q. B. 621.

The fraud charged against Griel is one both of representation and concealment. Without extending this opinion so as to examine the numerous rulings of the court, we epitomize the following propositions:

If Griel stated to the plaintiffs that he and Matthews and O'Connell had contracted to buy the land in question from Moses, and were to pay one third cash, and execute their notes for the balance of the purchase-money, this imported *prima facie* that the notes were to be *joint*, and not several notes. The mere statement of a joint purchase, in part on credit, would imply the just expectation of a joint promise

to pay the consideration price. A failure, therefore, to particularly disclose the independent fact that joint notes were to be given, if such were a fact, would not, under these circumstances, be a fraud.

But, if Griel, on the one hand, represented that *separate* notes were to be given, and the truth, on the other hand, was that *joint* notes were to be given by him and his co-purchasers, this would be the misrepresentation of a material fact, which would vitiate the contract, if the plaintiffs relied on such statement, and were justified by the circumstances in relying on it as an inducement to such contract, and were thereby deceived and injured. And this result would follow, although Griel did not know his statement was untrue.

The evidence shows that the facts of the trade with Moses were known to Griel, and entirely unknown to the plaintiffs. This inequality of knowledge or information would justify the plaintiffs in relying on any representation made to them by Griel, as to any material fact connected with the trade.

The alleged statement of Griel, as to what the plaintiffs "would have to do in order to get a good title," does not necessarily import any affirmation of the terms of the contract with Moses. It may be construed into an expression of opinion by him merely, and nothing more. And if construed as an opinion, to be fraudulent, it must be shown to be knowingly false, made with intent to deceive, and to have been accepted and relied on by the plaintiffs as true.

It is argued that Griel was guilty of fraudulent concealment, because he knew that his agreement with Moses was *verbal,* and he failed to disclose this fact to the plaintiffs. How this circumstance has operated to injure the plaintiffs is not clear from the evidence, in view of the fact that Moses has not been remiss in performing all he agreed to do, and has deposited in escrow, ready for delivery, a deed to the land, which would furnish the grantees all needful evidence upon which to base a suit for specific performance against the Sheffield Land Company. The agreement of Moses in fact is fully *executed,* so far as is possible on his part. The fact that the agreement of Moses was verbal, does not in any manner prejudice the plaintiffs in this action. Their difficulty lies in another fact, and that is the refusal of Greil's associates to unite with them in the notes, and the refusal of Moses to take them in substitution for Griel—a possible miscarriage necessarily incident to the very nature of their trade.

[Griel v. Lomax.]

To have been guilty of fraudulent concealment as to any fact, Griel must have had knowledge of such fact. It must have been material, and of a nature which it was *his duty to disclose* under the peculiar circumstances of the case; or, as said by Mr. Story, and often repeated by this court, such concealment, to be fraudulent, must be of "those facts and circumstances which one party is under some legal or moral obligation to communicate to the other, and which the latter has a right, not merely *in foro conscientiæ*, but *juris et jure* to know."—1 Story's Eq. Jur. § 216. The principle may be generalized, in other words, by saying that, to constitute fraud, in cases of mere silence, there must be the suppression of some material fact which honesty and good faith require to be disclosed under the facts of the particular case. There can usually be no fraud in silence, without intentional concealment, for it may be purely accidental. "Fraudulent concealment," says Mr. Pomeroy, "implies knowledge and intention;" and he adds, "it is hardly possible to conceive of a fraudulent concealment without a knowledge of the fact suppressed by the party, and an intention not to disclose such fact."—2 Pom. Eq. Jur. § 900; *VanArsdale v. Howard*, 5 Ala. 596; *Juzan v. Toulmin*, 9 Ala. 662; 44 Amer. Dec. 448; *Jordan v. Pickett*, 78 Ala. 331; *Moses v. Katzenberger*, 84 Ala. 95, 98; *Hughes v. Robertson*, 15 Amer. Rep. 104, and note, 106. Whether the duty to disclose exists in a given case, depends upon the fiduciary or other relation of the parties, the nature of the contract, the degree of trust reposed, whether expressly or impliedly, the value or nature of the particular fact, the relative knowledge of the contracting parties, and other circumstances of the case.

There are "cases in which the very propositions of a party imply that certain things, if not told, do not exist."—2 Parsons' Contr. 776-777. This point is more clearly treated by Mr. Pomeroy than by any other author we have examined, but we are not called on to enter into its discussion more fully in the present case.—2 Pom. Eq. Jur. § 902 *et seq*; 2 Add. Contr. (Morgan), 538; Story on Contr. §§ 516-521; *Bosywick v. Lewis*, 2 Amer. Dec. 73, and note; *Irvine v. Kirkpatrick*, 3 Eng. L. & Eq. 17; *Nicholson v. Janeway*, 16 N. J. Eq. 585; *Conover v. Waddell*, 22 *Ib.* 492.

It is apparent that several of the rulings of the court do not conform to these principles.

The rulings on the evidence seem to us to be without error.

Reversed and remanded.