CHENEY v. DICKINSON et al.

(Circuit Court of Appeals, Seventh Circuit. April 13, 1909.)

No. 1,515.

1. FRAUD (§ 31*)—RIGHT OF ACTION FOR FRAUDULENT REPRESENTATIONS.

One who has been induced by fraud to purchase property has his election of either one of two remedies at law: He may repudiate the purchase, return the property, and recover from the seller the consideration paid; or he may affirm the purchase, retain the property, and recover the difference between what he paid and the value of what he received from any one who intentionally deceived him into making the purchase, whether the seller or a third party.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 27; Dec. Dig. § 31.*]

2. FRAUD (§ 29*)—FRAUDULENT REPRESENTATIONS—RIGHT OF ACTION FOR DAMAGES.

Officers or promoters of a corporation, who made false representations in respect to its property and affairs in a prospectus and otherwise, to induce persons to buy its treasury stock from the corporation at par, did not thereby become liable in damages to one who bought stock from another stockholder at less than par, although he did so in reliance on such representations.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 25; Dec. Dig. § 29.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Plaintiff in error, who was plaintiff below, seeks the reversal of a judgment based on a directed verdict for the defendants. One Flagler was also named as a defendant in the declaration; but he was not served with process and did not appear, so the case was tried without him.

The declaration (in outline) charged that the defendants, including Flagler, organized a corporation with charter powers to manufacture and sell steel tubes and other steel and iron products; that they constituted themselves officers and directors; that they confederated and conspired to defraud the plaintiff and all others they could induce to purchase shares in said corporation, by making deceitful and fraudulent statements in prospectuses and otherwise; that to carry out their conspiracy they made certain statements and representations to the plaintiff which were material with respect to the value of the stock; that such statements were false and fraudulent, and were

known at the time by the defendants to be false and fraudulent, and were made by the defendants for the express purpose of deceiving and defrauding the plaintiff; that the plaintiff believed said representations to be true; that, relying thereon, "he purchased from the defendants 100 shares of the supposed treasury stock of the Flagler Iron & Steel Company, of the par value of $10,000, and paid therefor the sum of $10,000; that he now has in his possession certificates for said stock ready to be produced in court and surrendered to the defendants as the court may direct." The declaration also alleged that the entire issue of 30,000 shares of preferred stock and all of the 20,000 shares of common stock, except 10 shares subscribed and paid for in money so as to qualify the subscribers to serve as directors, were issued by the present defendants, acting as a board of directors, to the aforesaid Flagler as full-paid and nonassessable shares in payment for a worthless iron mine, and "that said stock was issued to Flagler and divided between him and the other defendants; that the treasury of the company never did own the stock, and never received the money that was obtained from the sale of the stock, and none of the money paid by the plaintiff for his stock went into the treasury of the company"; and "that the stock was at the time of the sale of the same to the plaintiff absolutely worthless and of no value whatever."

The prospectus, after setting forth descriptions of the character and value of mineral lands and manufacturing plants (which the evidence tends to prove were false), proceeds: "The company has now in its treasury for sale stock (not taken) to the amount of 30,000 shares—25,000 shares preferred, 5,000 shares common—to be sold from time to time as needed for construction purposes. For further information regarding terms of our securities and any other data, please address or call at the company's offices. Flagler Iron & Steel Company, Rooms 1322-23 First National Bank Building, Chicago, Illinois."

A letter from the plaintiff to the company reads as follows: "My attention has been called to your Co. as a good investment for funds, and I shall be glad if you will send me full particulars regarding terms of purchase of preferred stock and bonus of common stock, as well as price of common. I should like to know what would be the earliest date you expect to begin to pay dividends on the preferred. Please give me any other information I may require for proper consideration of purchase."

A long letter to the plaintiff, signed by the company, "by W. P. Dickinson, V. P. & T.," contained the following: "Replying to your favor of Dec. 19th, we regard the common and preferred stock a good investment. * * * Our mills Nos. 1 and 2 are built and we are now installing machinery. We shall sell about $500,000 more stock for equipment purposes and working capital. * * * * The price of the stock is par, common or preferred. We have not sold a share of stock to anybody for less than its face, and we have authorized no one to sell any stock for less than its face, and we have given no bonus to anybody. We aim to make this a manufacturing proposition worth the money. We want you to pay for what you get, and we expect to keep it good. * * * We shall be glad to have you come out (from your home in Connecticut) and look the proposition over, and make any investigation that you feel like, and take some of our stock if you are satisfied that we are all right. We are sending you under separate cover a prospectus of our company, which we would like to have you take the time to read." The omitted parts of the letter relate to representations of the character and value of the company's assets.

Other matters of evidence, as well as of lack of evidence, so far as they are deemed pertinent to the decision, are stated in the opinion.

Almon W. Buckley, for plaintiff in error.

Horace Kent Tenney, E. W. Froelich, Warren B. Wilson, and Samuel M. Sutloff, for defendants in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). A person who finds that he has parted with his money through being fraud-

ulently led into a purchase may pursue either one of two remedies at law. He may repudiate the purchase, surrender the property to the vendor, and recover the consideration. Such an action manifestly can be maintained only against the party from whom he purchased the property and to whom (or to whose order) he paid the consideration. Or he may affirm and abide by the purchase, retain the property, and recover the difference between what he paid and the value of what he received and is retaining. Such an action can be maintained against any one (vendor or third party, indifferently) who intentionally deceived the plaintiff into making the purchase. In such an action it is immaterial whether the defendant did or did not receive the consideration or other benefit, because the gravamen of the action is that the plaintiff has been deceived to his injury, not that the defendant has profited by the transaction. The difference between the two actions is not merely technical; in substance they are as far apart as affirmance and repudiation. Wilson v. New U. S. Cattle Ranch Co., 73 Fed. 994, 20 C. C. A. 241; Kingman v. Stoddard, 85 Fed. 740, 29 C. C. A. 413; Simon v. Goodyear Co., 105 Fed. 573, 44 C. C. A. 612, 52 L. R. A. 745; Westerfeld v. N. Y. Life Ins. Co., 129 Cal. 68, 58 Pac. 92, 61 Pac. 667.

The declaration in this case bears some evidence that it is an attempted mixture of the two irreconcilable theories. The allegations that the defendants' fraud led the plaintiff to purchase the shares from the defendants, and that the plaintiff brings the certificate of shares into court for surrender to the defendants, point to an action to recover from the defendants the consideration paid to them on a sale which plaintiff repudiates on account of fraud. If these allegations are ignored, as being surplusage, there may remain enough in the declaration to state a good cause of action for deceit. And inasmuch as the declaration was not questioned by motion or otherwise, and the motions for directed verdict were based solely on the contention that the evidence failed to establish a cause of action (without regard to the theory of the declaration), we have examined the evidence to determine its sufficiency to make a prima facie case on either theory.

The undisputed evidence shows that the plaintiff received the stock from and paid his money to one Costelo, a Boston broker of stocks and bonds; that Costelo was not the agent or representative of the company, or of any of the present defendants; that the stock sold through Costelo was the property of Flagler, and that Flagler received the consideration; that the defendants knew nothing of the sale from Flagler to the plaintiff, were not interested directly or indirectly in the shares that were so sold, and received no part of the consideration. In short, there was an utter failure of proof to sustain the first above stated theory of liability.

Evidence was introduced which tended to prove that a charter was legally obtained; that the defendants as directors carried through a bargain with Flagler by which all the stock (except 10 qualifying shares) was issued to Flagler as full paid and nonassessable, in consideration whereof Flagler turned into the company's treasury at least 15,000 of said shares and agreed to convey to the company a certain so-

called mine; that the company held options on certain grounds and buildings which the defendants hoped would be useful in creating the business for which the company was chartered; that, of the stock which Flagler retained, certain amounts were distributed among the defendants gratuitously; that the defendants intended that the stock in the treasury should be sold by the treasurer to the public for the purpose of raising money with which to try the experiment of making their otherwise worthless stock valuable; that the treasurer, in endeavoring to sell treasury stock, issued a prospectus which consisted mainly of false and misleading statements; that some of the defendants actually knew the statements were false, and others were conscious that they had no knowledge that the statements were true (Lehigh Zinc Co. v. Bamford, 150 U. S. 665, 673, 14 Sup. Ct. 219, 37 L. Ed. 1215); that the plaintiff in buying relied on the truthfulness of the statements in the prospectus and in the treasurer's letter; and that plaintiff was damaged to the extent of the purchase money because the stock was valueless.

As already stated, the plaintiff bought of a broker who was selling stock owned solely by Flagler. Not only was no purchase made by the plaintiff of treasury stock, or of stock in which the defendants were otherwise interested; but the record fails to show any legal ground for the plaintiff even to claim that he was buying treasury stock. On the contrary, the letter of the treasurer was explicit notice that the broker, in offering stock to the plaintiff at 50 cents on the dollar, must be dealing in stock that had already left the treasury.

Only one inference can be drawn from the prospectus. The defendants were inviting every one into whose hands the prospectus should come to buy treasury stock. That was in aid of the conspiracy, and the only conspiracy, which the evidence tended to sustain. And to all persons who bought treasury stock—who paid their money into the fund over which the defendants had a control and interest in common—relying on the truth of the statements of fact in the prospectus, all of the defendants who were parties to the false statements might well be held answerable in damages. But the plaintiff, so far as the defendants were concerned, was a purchaser on the market. And while the sponsors for false prospectuses that are issued to bring in money to the common treasury are justly made to respond to all persons who take the invited action, yet the law recognizes no right of action in one who relies without invitation on a statement addressed to a particular class which he stays out of. Peek v. Gurney, L. R. 6 H. L. 337; Wells v. Cook, 16 Ohio St. 67, 88 Am. Dec. 436; Hunnewell v. Duxbury, 154 Mass. 286, 28 N. E. 267, 13 L. R. A. 733; Hindman v. First Nat. Bank, 112 Fed. 931, 50 C. C. A. 623, 57 L. R. A. 108. "It has never been a ground of action that the defendant made a dishonest representation, and that the plaintiff had relied upon it and sustained injury. The moral obligation to speak the truth is not ground for a civil action unless the misrepresentation was intended to induce the very action by the plaintiff which has resulted in his damage." By the prospectus the defendants intended merely to induce the plaintiff or any other reader of it to pay his money into the treasury and receive stock from the company as seller. And the letters between the

plaintiff and the company do not change the situation in the slightest. The plaintiff did not frankly disclose what he was thinking of doing. On the contrary, he asked the company to name the price at which it would sell him stock—just what the company would expect from any one who had been attracted by seeing or being told of the prospectus. The company's letter in reply incloses another copy of the prospectus, repeats the representations thereof largely, and invites the plaintiff to buy some of the stock which the company is selling "for equipment purposes and working capital." Plaintiff's purchase of Flagler stock at 50 cents was not only outside of the action invited by the prospectus and letter, but was destructive of the defendants' endeavor to place treasury stock at 100 cents. So the case, on the evidence touching this branch of it, comes to this: While the defendants' deceit may afford a ground of action in favor of those who were misled into paying their money (or property) into the treasury for stock sold by the company, the deceit does not run with the stock into the hands of subsequent transferees.

The judgment is affirmed.