169 So. 280

## LOVELL v. SMITH et al.

### 6 Div. 889.

Supreme Court of Alabama.

May 21, 1936.

Rehearing Denied July 16, 1936.

A. Leo Oberdorfer and Jas. L. Pugh, both of Birmingham, for appellant.

J. T. Stokely and R. H. Scrivner, both of Birmingham, for appellees.

THOMAS, Justice.

The complaint was against the defendants as promoters and directors of a corporation. It alleges a breach of duty as such promoters occupying a fiduciary relation to prospective subscribers for the corporation's stock.

The questions for consideration are thus stated by appellant's counsel: " * * * that the defendants, while promoters, and inviting the plaintiff and others to subscribe to the stock, and having secured for themselves special prices and advantages and control of the voting stock of the company, caused the plaintiff to be solicited as a subscriber without disclosing to her in the prospectus, caused by the defendants to be issued, or otherwise, that the defendants had secured their stock upon more advantageous terms than the stock was being offered to the plaintiff and the public, and without disclosing that the defendants had procured at the outset control of the company by acquiring a majority of the voting stock, and that plaintiff was mislead and thereby caused to subscribe to stock of the company for which she would not otherwise have subscribed, and was damaged thereby; that this suit was brought within one year of the time that the fraud was discovered by the plaintiff."

A phase of this controversy presented by plaintiff's suit against the corporation for damages sustained in several purchases of its capital stock, is reported in Birmingham Bond & Mtge. Co. v. Lovell (C.C.A.) 81 F.(2d) 590, 592. There was judgment for rescission and the price and interest paid for initial purchases from the corporation of April 25, 1936, June 24, 1926, and March 1, 1927. It was held that there was no fraudulent statement of material facts contained in the prospectus there and here exhibited; nor was there fraudulent concealment of such facts as affecting the amounts and other purchases and damages sustained by the purchaser. As just stated, the district court held against plaintiff in the last indicated respects and there was appeal by the corporation and cross-appeal by plaintiff—appellant. As illustrative of this pleading, it may be well to note the observations on the material facts there stated, as follows:

"Plaintiff assigns error to the action of the court in excluding the stock bought from brokers from consideration by the jury, and in charging there was no fraud in the prospectus. Defendant assigns error to the refusal of the general affirmative charge.

"We agree with the District Court that it was not shown that any statements in the *prospectus were fraudulent and calculated to deceive plaintiff*. At the time the prospectus was shown to Lovell, none of the subsidiaries had been established. The establishment of these subsidiaries was to a certain extent germane to the main business of defendant, loaning money on Birmingham real estate, and the evidence was undisputed that they were profitable to the defendant and therefore beneficial to the stockholders; *nor would the ownership of a large amount of common stock by the directors, sufficient to control the corporation under ordinary circumstances, convert defendant into a closed corporation.*

"We also agree with the District Court in ruling against plaintiff as to recovery on the *stock bought from brokers*. Before

that time all the treasury stock had been sold by defendant. Defendant received nothing from these sales, and the brokers were not its agents. Plaintiff was charged with knowledge that the market value of the stock was constantly going down. When she initially purchased her stock it was at the rate of $58 for a unit of one share of preferred and one share of common. The price paid Glass was approximately $54 for the same unit. The price paid Pickens was approximately $51 per unit, and the average price of the stock bought from brokers was approximately $22 for the same unit. Furthermore, plaintiff had ample opportunity, through her husband as her agent, to familiarize herself with the business of defendant. *No obstacle was put in her way to examine the books and ascertain the financial condition of the company. Notwithstanding the false statements of Crane, the stock for a time was worth all that she paid for it. It would be stretching presumption too far to say that the stock purchased from brokers was bought on the faith of Crane's statements.* Cheney v. Dickinson (C.C.A.) 172 F. 109, 28 L.R.A.(N.S.) 359." (Italics supplied.)

Demurrer being sustained to the several counts as amended in this suit against the several defendants, plaintiff declined to plead further on account of the adverse ruling of the court. This appeal is taken to review the action of the court in sustaining the demurrer.

The complaint shows that the mortgage company was organized under the laws of Delaware on September 16, 1925, by Jay Smith, E. W. Saucier, and Ed S. Moore, with an authorized capital of 125,000 shares of nonpar stock, 85,000 shares of common and 40,000 shares of preferred stock, each, under authority of law, without nominal or par value (Randle v. Winona Coal Co. et al., 206 Ala. 254, 89 So. 790, 19 A.L.R. 118), and immediately qualified to do business in this state; that the common stock was to be sold at a price fixed by its board of directors at not less than $1 per share, and preferred stock to be sold for not less than $50 per share. It is averred that each defendant subscribed for 3,750 shares of common stock and paid 25 per cent of the amount of the subscription in cash and executed to the corporation demand notes for the balance of 75 per cent; that the corporation sold its other stock in units of one

share of common with one share of preferred at prices ranging from $51 *per unit* to $58 *per unit*.

In the face of purchase by plaintiff it is alleged that the defendants failed to disclose that they had acquired the controlling interest in the mortgage company's capital stock, and that they concealed this information from her.

The complaint does not show that any one of the defendants was instrumental in selling plaintiff any of the shares of stock to which reference is made—the first three purchases being made direct from the mortgage company and the subsequent purchases made on the open market. This is the effect of the pleading when construed most strongly against the pleader.

The complaint further alleges the matters contained in the prospectus, which is exhibited, as follows:

"(14–c) That the defendants caused a prospectus to be issued by the company on to-wit, the 1st day of February, 1926, and prior to the first subscription of its stock by the plaintiff on April 26, 1926, addressed to the public as an invitation to invest in its securities, one of said prospectuses was handed to the plaintiff's agent, W. S. Lovell, by an authorized agent of said Company, which said prospectus stated among other things the following: 'This Company differs from similar companies in that it is not a closed corporation, and that the invited subscriber is permitted to purchase its *common stock "with full voting rights* and all privileges of a stockholder."' Also, 'The Officers of the Birmingham Bond & Mortgage Company would like to have you numbered among its active stockholders, both as a preferred stockholder, receiving 7 per cent annual dividends on your investment, and as a common stockholder, sharing in the earnings of the Company, with full voting rights.' Also, 'The owner of the common stock is one of the Company, with voting rights and all privileges of a stockholder.' Also, 'You are invited to become an owner of a portion of the original capital of this thriving institution.' Also, 'Any officer or director will be glad to explain in greater detail the working plan upon which the Birmingham Bond & Mortgage Company has been organized and the reasons which impel those who are directing its activities, to believe so confidently in its continued success.'

"(15–c) That said prospectus showed prominently on its cover page the names of all the defendants as officers and directors, which prospectus was circulated among the public.

"(16–c) That the statement in the prospectus and its implication that the subscriber is permitted to purchase its common stock with full voting rights and all privileges of a stockholder was by reason of the matters herein stated untrue; that the statement therein and the implication that a common stockholder sharing in the earnings of the company with full voting rights was untrue as shown by the facts alleged herein; that the statement that the owner of the common stock is one of the company with voting rights and all privileges of a stockholder and its implication was, for the facts herein alleged, untrue; that the statement 'you are invited to become an owner of a portion of the original capital of this thriving institution' and its implication was untrue by reason of the facts herein alleged.

"(17–c) That the defendants did not disclose or cause to be disclosed in said prospectus, as was their duty to do, that defendants had previously secured to themselves, for a nominal or small sum as herein shown, the voting control of this company under terms and conditions not permitted to any other subscriber or stockholder, and at a more favorable price and terms so as to annul at all stockholders' meetings any effective vote on the part of the non-director stockholder, even if they voted as a unit, the 40,000 votes held by them, nor did the defendants disclose the existence of said contract entered into by the Company with Saucier on to-wit the 6th day of October, 1925, as was their duty. On the contrary the defendants concealed said matters.

"(18–c) That at no time prior to January 31, 1934, had the plaintiff discovered the plan and promotion and the purchase by the defendant directors of the common stock or the terms of such purchase, but at all times up to January 31, 1934, relied upon the fact that said defendants who were occupying fiduciary and confidential relations to her, and the public who were invited to buy the company's stock, were not deriving any advantage over other stockholders or prospective stockholders without a full and fair disclosure of the entire transaction, and that they were not the bene-ficiaries of any secret profits or advantages made or secured by their confidential and fiduciary relation."

■ It is well observed that the averments are not that the directors conspired and acted in such manner and effect to deprive other holders of common stock of any voice in the management of the corporation; or that the defendants assumed exclusive control and management of said corporation and voted their capital stock contrary to the best interest of the corporation. National Park Bank v. L. & N. R. R. Co., 199 Ala. 192, 74 So. 69. It is not disclosed by the complaint that the capital structure of the corporation and defendants' holdings of capital stock were not reported and truly disclosed to the State Securities Commission; is not alleged that the record of the State Securities Commission was misrepresented or concealed from her, or that material information was concealed from the Securities Commission by the defendants. Sections 9877, 9882, 9893, Code. In the absence of a request to the contrary, no disclosure was necessary or required of the directors, other than that made by the corporation to the Securities Commission authorizing the sale of the two classes of its corporate stock.

■ In the absence of fiduciary relations imposing the duty to disclose, it is established: (1) that there must be some act or conduct calculated to mislead, deceive, lull into repose, or prevent inquiry, to bar the running of the statute of limitations; (2) that fraud is discovered within the contemplation of law when it is readily discoverable or when a party is put on notice thereof. Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 94 So. 606.

In National Park Bank v. L. & N. R. R. Co., 199 Ala. 192, 74 So. 69, it was declared that to maintain an action for fraudulent concealment there must be shown a duty to disclose the truth, and that the disclosure was not made when opportunity was presented whereby the party to whom the duty of disclosure was due was induced by such failure to act to his injury. The pleading in that case was stated and observations as to the law of such a case declared as follows:

"Count E alleges the same conspiracy, and attempts to aver how defendant's influence with connecting carriers exercised to procure the delivery of cotton upon

false bills of lading amounted to a fraud on plaintiff. The averment is: 'By willfully deceiving, or willfully causing to be deceived, or making false representations, or causing false representations to be made, or fraudulently suppressing or fraudulently causing to be suppressed the truth from the holders of such false and spurious bills of lading when their complaints or inquiries in reference to the cotton therein purported to have been shipped were referred to him as agent of the defendant and in the line and scope of his duties as such agent,' etc.

"It was thus sought to allege a course of business, established by Knight, Yancey & Co. and the defendant, by which the former were enabled to sell a large number of their drafts with bills of lading attached. To base an action for fraudulent concealment, a duty to disclose the truth must be shown, that the disclosure was not made when opportunity to speak and inform was presented, and that the party to whom the duty of disclosure was due was induced thereby to act to his injury. 1 Story, Eq. Jur. § 207, p. 216; 2 Pom.Eq.Jur. § 900; Griel v. Lomax, 89 Ala. 420, 427, 6 So. 741; Hall & Bro. v. Western Assurance Co., 133 Ala. 637, 32 So. 257; Bradfield v. Elyton Land Co., 93 Ala. 527, 8 So. 383; Saltonstall v. Gordon, 33 Ala. 149; Van Arsdale v. Howard, 5 Ala. [596], 598, 602; Greil Bros. Co. v. McLain [197 Ala. 136], 72 So. 410; Corry v. Sylvia y Cia, 192 Ala. 550, 68 So. 891 [Ann.Cas.1917E, 1052]. In Flewellen et al. v. Crane, 58 Ala. 627, it is said that fraud is a conclusion of law from facts stated and proved. When it is pleaded at law or in equity, the facts out of which it is supposed to arise must be stated; a mere general averment without such facts is not sufficient."—199 Ala. 192, 216, 74 So. 69, 80.

In Griel v. Lomax, 89 Ala. 420, 427, 6 So. 741, 744, touching this subject, it was said: "To have been guilty of fraudulent concealment as to any fact, Griel must have had knowledge of such fact. It must have been material, and of a nature which it was *his duty to disclose,* under the peculiar circumstances of the case; or, as said by Mr. Story, and often repeated by this court, such concealment, to be fraudulent, must be of 'those facts and circumstances which one party is under some legal or moral obligation to communicate to the other, and which the latter has a right, not merely in foro conscientiæ, but juris et jure, to know.' 1 Story, Eq.Jur. § 216. The principle may be generalized, in other words, by saying that to constitute fraud, in cases of mere silence, there must be the suppression of some material fact which honesty and good faith require to be disclosed, under the facts of the particular case. There can usually be no fraud in silence, without intentional concealment; for it may be purely accidental. 'Fraudulent concealment,' says Mr. Pomeroy, 'implies knowledge and intention;' and he adds: 'It is hardly possible to conceive of a fraudulent concealment without a knowledge of the fact suppressed, possessed by the party, and an intention not to disclose such fact.' 2 Pom.Eq.Jur. § 900; Van Arsdale v. Howard, 5 Ala. 596; Juzan v. Toulmin, 9 Ala. 662 [44 Am.Dec. 448]; Jordan v. Pickett, 78 Ala. 331; Moses v. Katzenberger, 84 Ala. 95, 98, 4 So. 237; Hughes v. Robertson [1 T.B.Mon.(Ky.) 215], 15 Am.Dec. 104, and note, 106. Whether the duty to disclose exists in a given case depends upon the fiduciary or other relation of the parties; the nature of the contract; the degree of trust reposed,—whether expressly or impliedly; the value or nature of the particular fact; the relative knowledge of the contracting parties; and other circumstances of the case." See, also, Williams et al. v. Bedenbaugh, 215 Ala. 200, 110 So. 286.

These principles and statutes were given statement in an action on the case in Brasher v. First National Bank of Birmingham, ante, p. 340, 168 So. 42.

■ So much for the sufficiency of allegations of a complaint to constitute fraudulent concealment. Facts necessary to constitute a fraudulent concealment must be material, made to induce another to act, and upon which he does act to his injury. §§ 5677, 8050, Code.

This being a foreign corporation, it was required, (section 7209, Code) before doing business, to file with the secretary of state, a certified copy of its articles of incorporation, designating one known place of business in this state. Construing the pleading against the plaintiff, a copy of the mortgage company's charter was available to her, and there was evidence showing that such provisions of the charter, as to purchases in the open market, which were a matter of record, were known to her and open to her inspection before and at the time of her purchases.

■ There is no confidential relation between directors of a corporation and prospective purchasers of its capital stock. As declared by Mr. Justice Somerville in Williams et al. v. Riddlesperger, 217 Ala. 62, 114 So. 796, no fiduciary relation exists between directors of a corporation and prospective stockholders, and the mere silence of a director will not alone render him liable as for fraud or deceit as a corporate agent selling stock to persons outside the corporation; and the director's liability cannot generally be predicated upon acquiescence in a codirector's fraud *in the absence of notice of fraudulent concealment.* So, also, was the holding in Williams et al. v. Bedenbaugh, 215 Ala. 200, 110 So. 286.

■ We are of the opinion that the fact that defendants had purchased a controlling interest in the capital stock did not impose upon them the duty to inform plaintiff when no information concerning such purchases was concealed or sought. Beitman v. Steiner Bros., 98 Ala. 241, 13 So. 87, 90; 73 A.L.R. 1440, note. See, also, Vaughn et al. v. Alabama National Bank, 143 Ala. 572, 42 So. 64, 5 Ann.Cas. 665.

■ The fact that the defendants paid only a part of the purchase price in cash and had extended to them credit or partial payment terms resulted in no injury to the plaintiff. The stock so purchased and issued in good faith, secured by the superior statutory lien for the balance due thereon, was no fraud upon plaintiff. Crawford et al. v. Twin City Oil Co., 216 Ala. 216, 113 So. 61. The dues for corporations and its stock are secured in the payment as provided by law. Section 236, Constitution; Elyton Land Co. v. Birmingham Warehouse & Elevator Co., 92 Ala. 407, 9 So. 129, 135, 12 L.R.A. 307, 25 Am.St.Rep. 65. The alleged wrongs, if such there were, in not paying the full amount subscribed in cash, are not torts, but matters of contract obligation between the subscriber and the corporation that controls.

■ It is not averred that the defendants acted as promoters in the sale of the capital stock in question to plaintiff. Moore et al. v. Warrior Coal & Land Co., 178 Ala. 234, 59 So. 219, Ann.Cas.1915B, 173; A. J. Cranor Co., Ltd. et al. v. Miller et al., 147 Ala. 268, 41 So. 678; Cook on Stockholders, § 651. It is not averred that Smith, Moore, or Saucier, or other defendants, invited or induced plaintiff to make any of the purchases averred. There is no merit in the insistence of plaintiff that as between her and the defendants, they, or any one of them, were promoters within the definition ascribed to that office or word. The observation of the Circuit Court of Appeals, Fifth Circuit, quoted above, has application to this phase of the complaint and to purchases of stock from individuals. Birmingham Bond & Mortgage Co. v. Lovell, 81 F.(2d) 590, 592, 593; Cheney v. Dickinson et al. (C.C.A.) 172 F. 109, 28 L.R.A.(N.S.) 359; Mandelbaum v. Goodyear Tire & Rubber Co. et al. (C.C.A.) 6 F.(2d) 818.

■ The complaint fails to aver facts that show the corporation to have been what the old books calls a closed corporation. The definition of such corporation is, "where the major part of the persons to whom the corporate powers have been granted, on the happening of vacancies among them, have the right of themselves to appoint others to fill such vacancies, without allowing to the inhabitants or corporators, in general, any vote or choice in the selection of such new officers." McKim v. Odom, 3 Bland (Md.) 407, 416, 418, where the Chancellor observes: "A corporation not being, like a natural person, one of the elements of society, of which government is formed, can only be considered as a creature of the law. It is the law alone which gives to it a personality distinct from that of each of its members, and confers on it the right to act by its president, directors, or agents, in a manner analogous to that in which the government itself acts by its regularly constituted functionaries. This individuality of character, and the right so to act is, then, nothing more than a portion of the power of the government with which it has been invested."

It appears that the voting power was inherent in the holders of the common stock, and the fact that the directors acquired the majority thereof does not constitute it a closed corporation. The complaint discloses certain original holders and directors had died or resigned, and the counts do not aver that the directors owned a controlling interest in the common stock of the company at the time of plaintiff's purchases, or now. The observation made by the Circuit Court of Appeals in Birmingham Bond & Mortgage Co. v. Lovell, 81 F.(2d) 590, 592, and applicable to this situation is: "Nor would the ownership of

634

a large amount of common stock by the directors [defendants], sufficient to control the corporation under ordinary circumstances, convert defendant into a closed corporation."

We are of the opinion and so hold upon the facts averred, that there was no fraudulent or untrue statement in the prospectus as exhibited in the complaint; nor is it shown that special benefits were secured to·defendants and for which the defendants were under duty to account to the mortgage company or any of its stockholders. The complaint does not show that defendants did not comply with the statute as to their holdings of capital stock. Sections 9877, 9882; 9883, 9884, 9886, 9887, 9893, Code. In the absence of a request, before and at the time of purchase, no other disclosure was required to be made—the disclosure required by the statute being sufficient. Sims v. Tigrett, 229 Ala. 486, 158 So. 326; King v. Livingston Mfg. Co. et al., 180 Ala. 118, 60 So. 143; 26 C.J. p. 1121, § 48.

It results that the demurrers to the several counts of the complaint were sustained without error.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.