JOHN A. MOYERS, Appellant, v. KATHERINE V. FOGARTY, as Administrator of the Estate of D. J. FOGARTY, Deceased, Appellee.

140   701
144   599

**Principal and agent:** AUTHORITY OF AGENT: EVIDENCE. On the question of an agents authority to bind his alleged principal by certain contracts for the sale of fruit trees, the evidence is held sufficient to take the issue to the jury.

**Same.** Where it was conceded that an agent could bind his principal by a reasonable contract for the sale of fruit trees, and the evidence indicated that his authority in that respect was somewhat general, a separate instrument executed in the same manner and as a part of the same transaction, obligating the principal to plant the trees and replace them for a term of years, should have been received in evidence in an action for breach of the contract.

**Same:** RATIFICATION OF AGENTS CONTRACT. A principal cannot affirm one part of his agent's contract which is favorable to him and at the same time disaffirm the remainder; and to bind him by the entire contract which he has affirmed in part, it is not necessary to show that he had knowledge of all its conditions.

**Agency:** COMPETENCY OF EVIDENCE. Absolute knowledge is not the test of a witness's qualification to speak upon a given subject; so that an employee who for several years had been at work in and about his employers place of business, having had an opportunity to know his fellow employees an who in fact knew the alleged agent who made the contracts in suit, was competent to testify that such agent was in the employ of his principal at the time the contracts were made, even though not a witness to his contract of employment and knew nothing of its terms.

**Parol evidence:** APPLICATION OF RULE. A party cannot conduct his business by making contracts in an assumed name and then avoid the obligations by invoking the parol evidence rule to exclude proof of his true relations to the transaction.

**Attorney and client:** PRIVILEGED COMMUNICATIONS: BURDEN OF PROOF. To exclude the communication of a client to his attorney as privileged the relation of attorney and client must exist, and the communication must have been made to enable the attorney to properly conduct the suit or better advise his client; and where the record as made does not disclose a confidential relation the burden is upon the party raising the objection of privilege to show it.

**Pleadings:** AMENDMENT: DISCRETION. Where an amendment to a petition effecting a radical change in the issues is offered late in the progress of the trial, the court's refusal to permit it is not an abuse of discretion in that regard.

**Pleadings:** REPLY. Where there is evidence in support of the allegations of a reply, and its only effect is to conform the allegations to the proof and the theory upon which the case was tried, it should not be stricken.

**Appeal:** COSTS. Where counsel rely upon numerous alleged errors of the trial court in ruling upon the admission of evidence, but his brief makes no reference to the record except by stating the name of the witness, and marginal numbers of lines are also omitted from the abstract, costs will not be allowed for printing the same.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

TUESDAY, JANUARY 19, 1909.

ACTION at law to recover damages for breach of contract. There was judgment for the defendant upon a directed verdict, and plaintiff appeals.—*Reversed.*

*Wright & Baldwin* and *A. W. Askwith,* for appellant.

*John P. Organ* and *Walter I. Smith,* for appellee.

WEAVER, J.—The plaintiff's alleged causes of action are stated in eight separate counts of his petition which are, in substance, as follows: Count 1 declares upon a written contract or order, dated June 2, 1898, alleged to have been made between him and D. J. Fogarty acting by an agent for the purchase of fifty-three apple trees, and some minor items of other trees and plants. Count 2 declares upon a similar contract dated June 16, 1898, for the purchase of one thousand apple trees. Count 3 is upon a similar contract dated January 20, 1900, for the purchase of four thousand cherry trees. Count 4 is upon a similar contract dated March 2, 1900, for the purchase of four hundred and seventy cherry trees. Count 5 is upon another similar contract, dated March 14, 1900, for the purchase of one thousand five hundred and thirty cherry trees. Count 6 is upon another similar contract dated May 14, 1900, for the purchase of one hundred and twenty-six apple trees and four hundred plum trees. Count 7 is upon still another similar contract, dated May 24, 1900, for the purchase of one thousand three hundred and sixty apple trees and one thousand six hundred plum trees. Count 8 is based upon an open account for work and labor alleged to have been done at the instance and request of said Fogarty. The written contracts mentioned in counts 1 and 2 state the name of the seller to be J. R. Rice, and are signed "J. R. Rice, by W. J. Hoey." The contracts

mentioned in counts 3, 4 and 5 also give the name of
J. R. Rice as seller, and are signed "J. R. Rice, by A.
J. Dunigan." The contracts mentioned in counts 6 and
7 name D. J. Fogarty as the seller, and are signed "D.
J. Fogarty, by G. E. Guthrie." It is alleged, however,
that in each instance D. J. Fogarty, doing business under
the name of the Council Bluffs Nursery Company or the
Council Bluffs Nurseries, was the real party in interest
in making the sale, and that Hoey, Dunigan and Guthrie
were acting as his agents or representatives therein. It is
also alleged that J. R. Rice had formerly been the owner
of said nursery business, and that Fogarty, having become
the purchaser thereof, claimed and represented that he
also had the right to use the name of said Rice, and did
in fact so use it, instead of his own individual name, in
some of the transactions above referred to. Each contract
contains a clause in these words: "Substitution to be made
if absolutely necessary."

The contract of June 16, 1898, bears an indorsement
as follows: "All trees replaced free of cost for five years."
Signed "W. J. Hoey." The contract dated January 20,
1900, has indorsed upon it the following: "I agree to
plant this bill of trees in the spring of 1900, and replace
all trees that die for five years. Two thousand Dyehouse,
two thousand Osthine Russian. This order is subject to
change of varieties and number of trees of two or three
hundred either more or less to plant the piece of ground
intended for them. This bill to be settled by bankable note
one year at a time for three or five years if necessary at
six percent interest. A. J. Dunigan." The contract of
March 14, 1900, has the following indorsement: "One
thousand Dye House. Five hundred and thirty Osthein
Russian. Twenty-five E. Ohio. Twenty-five Mores Early.
Twenty-five Worden. I am to replace all trees for five years.
A. J. Dunigan." The contract of May 26, 1900, bears the
following: "All stock sold to J. A. Moyers is to be planted

by the first party. This order is sold on time." Signed "George E. Guthrie."

The plaintiff further alleges that at the time each of said sales were made or orders given the said Fogarty by his said agents undertook and agreed to replace in his orchard all trees received under said orders which failed to live and thrive at any time during the period of five years, and that on May 26, 1900, and as a part of the same transaction in which the order mentioned in the seventh count of the petition was given, the said Fogarty, acting by his agent, entered into a written agreement for the replacement of all nursery stock then sold, or theretofore sold, to said plaintiff for the period of five years without further charge, and set forth in the following writing which is known and mentioned in the record as "Exhibit Z": "Exhibit Z. May 26, 1900. This is to certify that we the undersigned nursery men of Council Bluffs, Iowa, do hereby agree to replace all nursery stock for J. A. Moyers, of Boone, Iowa, that said J. A. Moyers purchased of the Council Bluffs Nursery for a period of five years (5 years) free of charge, and the above agreement holds good for any nursery stock that J. A. Moyers may purchase of said Council Bluffs Nursery, and said J. A. Moyers will not allow his live stock such as cattle and horses to run at large among said nursery stock and in witness thereof we attach our respective names. [Signed] J. A. Moyers, D. J. Fogarty, G. E. Guthrie." He further alleges that, of the trees so ordered and purchased by him, much the greater part failed to grow, or were lost during the period of five years covered by said agreement, but that said Fogarty, though often requested so to do, failed and neglected to replace the same, and judgment is asked against him for the damages so resulting.

Since the beginning of this action D. J. Fogarty has died, and the administratrix of his estate, Katherine V. Fogarty has been substituted as defendant. Answering the

petition, the defendant denies the same; denies that Fogarty was in any manner a party to the alleged transactions; denies that any of the persons so dealing with plaintiff were agents of said Fogarty, or authorized to represent him in any manner by their contracts. She specifically denies that said Fogarty ever executed the contract Exhibit Z, or authorized anyone to enter into the same, or to subscribe his name thereto. On these issues the jury was impaneled, and trial proceeded, closing with a directed verdict and judgment for defendant.

It is evident that under the issues tendered by the answer it became a matter of first importance to the appellant to produce, if he could, evidence tending to establish Fogarty's connection with the several contracts in suit, as well as the authority of the several alleged agents to represent him in said transactions, and to this end much testimony was offered upon the trial. Many exceptions have been preserved to the rulings of the trial court upon these offers. The bearing of the testimony and of the rulings thereon can be better understood if we first mention the facts which are conceded and some of the contested allegations of the petition, of which there is competent evidence. It is shown, without substantial controversy, that for a period of years prior to December, 1899, J. R. Rice, doing business as the Council Bluffs Nursery Company or the Council Bluffs Nurseries, was a wholesale and retail dealer in nursery stock at Council Bluffs, Iowa. His sales were quite largely to dealers who, by themselves and their agents, sold the stock at retail. Prior to the date last mentioned Fogarty was purchasing quantities of trees from Rice and retailing them, in which business he employed agents. Though denied in the pleadings, it is conceded in argument that W. J. Hoey was one of these agents in the service of Fogarty, and there is evidence tending to show that A. J. Dunigan acted in like capacity. It is also conceded that said Hoey is the person who took

the orders or contracts in the name of Rice, as mentioned
in counts 1 and 2 of the petition, and that in so doing he
was acting as agent of Fogarty who received and filled the
said orders and collected payment therefor.   It is further
conceded in argument, and was conceded upon the trial,
that G. E. Guthrie, who took the orders mentioned in
counts 6 and 7 of the petition, was the agent of Fogarty,
and authorized to take the same, but his authority to exe-.
cute Exhibit Z or subscribe Fogarty's name thereto is con-
tested.   In December, 1899, Rice sold the business and
the right to use the business name to Fogarty.   There is
evidence tending to show that at the time of said sales to
plaintiff Hoey and others of his agents had been supplied
by Fogarty with rubber stamps to affix the name of Rice
to tree contracts, but Rice testifies that this was done with-
out his knowledge or authority.   Dunigan appears to have
used such a stamp in taking the contracts mentioned in
counts 3, 4 and 5 of the petition.   Guthrie, the admitted
agent of Fogarty, had and used a rubber stamp in affixing
the signature of the latter to the contracts mentioned in
counts 6 and 7.   Other pertinent facts will be mentioned
in the further progress of this opinion.  Broadly speak-
ing, it may be said that, when we have taken account of
the matters alleged and the matters admitted, the contro-
versy narrows itself around these two propositions:  First,
whether Fogarty was in any manner responsible to plain-
tiff upon the orders and contracts taken by Dunigan, and
mentioned in counts 3, 4 and 5 of the petition; and,
second, whether the alleged agreement to replace trees for
the period of five years, and especially the agreement em-
bodied in Exhibit Z, were made by Fogarty or by any
other person having authority to make such contract in his
name.

I.   As will be noticed, the contracts taken by Duni-
gan under date of January 20, 1900, March 2, 1900,
March 14, 1900, provided for the sale to the plaintiff of

the aggregate number of six thousand cherry trees. It ap-

1. PRINCIPAL AND AGENT: authority of agent: evidence.

pears that the first of these orders contemplated a supply sufficient to plant a given field owned by plaintiff, but by reason of mistakes in the estimate, or a conclusion to lessen the space between the planted trees, the number was thereafter increased by the two later orders, enlarging the number from four thousand to six thousand and that the three orders constitute, in effect, one transaction. It is insisted by appellee that there is no competent evidence tending to show that Fogarty was the principal in said sales, or that Dunigan was in any way representing him therein, or that he is in any manner liable to the plaintiff for Dunigan's failure, if any, to perform his part of the agreement. At the risk of some repetition we collate a few of the reasons appearing of record why we think this question should have been submitted to the jury under proper instructions. There was evidence tending to show that Dunigan had prior to this time been the agent of Fogarty in this line of business. There was also evidence from which the jury could find that, a few days before the first of the cherry tree orders was given, Mr. Fogarty in person, with Dunigan and Guthrie, appeared at the plaintiff's home in Boone County, where they together sought to secure his order for cherry trees with which to plant a so-called commercial orchard. In this negotiation Fogarty coupled Dunigan's name with his own, and solicited plaintiff to purchase from them, but, the price demanded not being satisfactory to plaintiff, the parties separated without closing a deal. Later Dunigan reappeared, saying that Fogarty and he were now prepared to reduce the price, and upon this basis an agreement was reached and the trees ordered. The contracts, though nominally made with J. R. Rice, as was done with the prior apple tree orders, and having his name subscribed thereto by Dunigan, were confessedly made after Rice had sold the business to Fogarty,

and there is no pretense that Rice had anything to do with the transaction. Fogarty had on other occasions authorized or ratified the practice of using Rice's name in tree contracts and affixing Rice's name thereto by the use of rubber stamps. A witness in the employ of Fogarty at that time swears that Fogarty exhibited these cherry tree contracts, or some of them, to him, saying he had sold another large order to Moyers, and directed him to pack the trees for shipment. Indeed, we do not understand defendant to contend that the trees to fill these orders were not furnished by Fogarty, but the contention is that if so furnished it was in the nature of a sale to Dunigan to enable him to fill his personal contract with appellant. Each of the cherry tree orders contains the sentence "Address all communications to lock box 73, Council Bluffs, Iowa," and subsequent correspondence with Fogarty indicates that this was the number of his post office box. Fogarty and Dunigan discussed their business relations with or in the presence of the witness Benjamin, who says that it was to the effect that Fogarty furnished the stock, and Dunigan went out and made the sales, the profits being divided between them. Other matters having the same general tendency might be added, but enough has been mentioned to demonstrate that, while some of the incidents standing alone would be of but slight significance, yet taken together they make up a quite formidable array of evidence, from which the jury could well find that Dunigan in these transactions was the agent and representative of Fogarty.

II. We next give attention to the writing Exhibit Z. Standing alone, this instrument is somewhat ambiguous and incomplete; but, when taken into consideration with the story of the dealings theretofore had between the appellant and the various representatives of the Council Bluffs Nurseries, its effect is quite clearly revealed. Looking only to its date, May 26, 1900, this writing would appear to have been made in the

2. SAME.

interim between the last two sales to the appellant, under the contracts dated May 14, 1900, and May 29, 1900, as set out in counts 6 and 7 of the petition. The appellant's testimony is to the effect that the making of said exhibit and the last-mentioned tree purchase were parts of one and the same transaction. As will be remembered the sales of May 24th and May 29th were both negotiated by G. E. Guthrie, as the agent of Fogarty, and that the authority of said agent to represent Fogarty therein is conceded by counsel. The written memorandum of sale was in each instance subscribed by Guthrie with Fogarty's name, using a rubber stamp for that purpose. Exhibit Z was executed in the same manner, and by the same person; and, if appellant's testimony is to be believed, and it must be taken as true for the purposes of this appeal, it was made at the same time, and as a part of the same transaction, by which the last bill of trees was sold to him. On being offered in evidence by the appellant this exhibit was objected to by the appellee because the paper appeared not to have been signed by Fogarty, but by Guthrie, and Guthrie's authority in the premises had not been sufficiently shown. It was further objected that there is no presumption that a traveling salesman has authority to make such contracts. It is conceded that the agent may bind his principal by "certain reasonable contracts" with respect to sales which he makes, but that Exhibit Z is clearly in excess of such implied powers. The objection was sustained, and the exhibit excluded. We think it should have been admitted. As already suggested, Guthrie was admittedly Fogarty's agent to make the contracts of sale, and it is by no means certain that his authority was strictly limited to the making of sales. The authorized contract of May 29, 1900, in connection with which it is claimed Exhibit Z was executed, is more than a mere contract of sale. It binds Fogarty, not only to sell the trees, but to plant them out. The contract made by Hoey with plaintiff, as shown

in the second count of the petition, obligates Fogarty to replace trees, free of cost, for five years. Fogarty is shown to have recognized the authority of his agents in this respect by shipping some trees to replace losses, and on at least one occasion offered to replace others as soon as he could ascertain how many were required. From these and other circumstances disclosed in evidence the inference may fairly be drawn that Guthrie's agency was of a somewhat general character, and whether the making of Exhibit Z was under all the circumstances fairly within the scope of his apparent authority was a jury question.

Moreover, if, as plaintiff's evidence tends to show, the giving of the order of May 29, 1900, and the execution of Exhibit Z were a part of one and the same transaction, then neither Fogarty nor his administratrix could be heard to affirm the validity and binding force of one part of the deal and repudiate the other. Mr. Fogarty did recognize the sale made to Guthrie, and availed himself of the advantages and profits arising therefrom, and in so doing he must be held to have assumed its burdens as well. He could not have affirmed the transaction so far as it was profitable to him, and be allowed now to disaffirm the remainder. *Eadie v. Ashbaugh,* 44 Iowa, 519; *Farrar v. Peterson,* 52 Iowa, 420; *Bank v. McCorkell,* 91 Iowa, 660. For the application of this rule it is not necessary to show that the principal, who takes advantage of an unauthorized contract by his agent, had knowledge of all the terms and conditions entering into it. *Refrigerator Co. v. Vinton,* 79 Iowa, 243; *Hollingsworth v. Holbrook,* 80 Iowa, 156; *Lull v. Bank,* 110 Iowa, 537; *Dodge v. Tullock,* 110 Mich. 480 (68 N. W. 239); *Elwell v. Chamberlin,* 31 N. Y. 611. Without further discussion in this direction we hold that the claim made by the appellant upon the agreement Exhibit Z should have been submitted to the jury.

III.   Of exceptions to rulings upon offers of evidence

3. SAME: ratification of agent's contract.

we may note the following. One Harris, a witness for the appellant, having shown that he was employed by Fo-

**4. AGENCY: competency of evidence.** garty in and about the fruit tree business during all of the time covered by the transactions in controversy, and was also then acquainted with Dunigan, the alleged agent, who took the cherry tree orders, was asked for whom Dunigan was at work during the time covered by said sales, but objection by defendant that the matter called for by the question was a mere opinion or conclusion of the witness was sustained, and the answer excluded. The evidence was competent, and the objection should have been overruled. While the answer called for may partake somewhat of the nature of a conclusion, it so far partakes of fact that the witness speaking from personal knowledge and acquaintance is qualified to testify upon the subject. If, for instance, I see my neighbor in daily charge of a street car on which I ride, see him performing the ordinary duties of a conductor, and wearing the uniform appropriate to that position, it would be an exceedingly strange application of the rules of evidence which would exclude my testimony that he is an employe of the street railway company. Is not the factory hand a competent witness to the fact that the workman by his side is a servant of the same employer with himself, though he has not seen or heard the contract of employment? May not the traveling salesman, long in the service of an employer, know to a moral certainty that another named person is engaged in the same service with him, though he is not a witness to the hiring and knows nothing of its terms? The rule which excludes testimony as to mere conclusions is both safe and salutary within its proper limitations; but if carried to an extreme of literal interpretation it would put the ban of incompetency upon all testimony, for every assertion of fact given by an alleged eyewitness is but the assertion of a conclusion drawn by him from the evidence of his senses, which may them-

selves be defective and create in his mind misleading impressions. Absolute knowledge is not, and never has been, the test of a witness' qualifications to speak upon a given subject. 1 Wigmore's Evidence, section 550. And this is peculiarly true when he is asked to speak of the position or occupation of another person of his acquaintance, or of the relation which that person bears to another. Having shown his personal acquaintance and opportunities of observation, there is no rule of evidence which disqualifies him from testifying that A. is the son of B., or C. is the clerk in the store of D., or that E. is a policeman of the city of his residence, or that F. is the cashier of a named bank. The record tends to show that Harris had been for several years in the employ of Fogarty, serving some of the time as traveling salesman, and some of the time in and about the headquarters of the business in Council Bluffs, thus having good opportunity to know who were his fellow employes and agents; and, to the extent of the knowledge thus obtained, he should have been permitted to testify.

Testimony was also offered to the effect that, while several of the tree orders were taken in the name of J. R. Rice, they were in fact taken by Fogarty's agents for his benefit, and were filled by him, but upon

5. PAROL EVIDENCE: application of rule.

objection that this was an attempt to vary a written contract by parol evidence it was excluded. The objection should have been overruled. The rule against parol testimony has no application to such state of facts. The evidence offered has no tendency to vary any term or condition of the contract. Its effect, if any, is one of identification. A party can not escape the obligation of a contract by doing business in an assumed name, or by the unauthorized use, or mistaken use, of the name of another person, and then invoke the aid of a rule of evidence to exclude proof of his real relation to the transaction. Directly in point is *Simmons v. Marshall,* 3 G. Greene, 502 (Iowa). See, also, 17 Cyc. 709, 710.

If, for instance, it should be a fact that, while Rice was proprietor of the business he had quantities of printed order blanks directed to himself for the use of his agents, and upon the sale of the business such supplies passed into the hands of Fogarty, and the agents of the latter in making use of them had negligently or inadvertently failed to substitute Fogarty's name therein, but the orders so taken had been delivered to him and filled by him according to the real intent of the parties, we think it very clear that the rule against parol evidence would not be applied to exclude proof of that fact. Or let us suppose that at the time Rice sold the business, his agents, supplied with his blanks and stamps, were out canvassing for orders, and that, without knowledge of the change in proprietorship, they continued for some time to take such orders in the same form, but on turning them in at the home office the new proprietor, as he lawfully might do, should receive and treat them as orders directed to himself, we think there is no rule of law which will prevent those who have given such orders from proving the fact and enforcing the contract against him who is the real party in interest. If this be a correct assumption, then for still stronger and more obvious reasons will the rule forbidding parol testimony not be applied for the protection of one who, for reasons of his own, does business or enters into contracts under the name of another.

Fremont Benjamin, an attorney at law, was called as a witness for appellant, and asked to state what Fogarty had said to him respecting the relations between himself

6. ATTORNEY AND CLIENT: privileged communications, burden of proof.

and Dunigan, the alleged agent who took the cherry tree orders, but an objection thereto, on the ground that the communication called for was one received by the witness in professional confidence, was sustained. The showing on which this objection was grounded was substantially as follows: Benjamin, while holding no general retainer from Fogar-

ty, had been frequently employed by him. In the year 1902 Harris sought to employ Benjamin to bring an action against Dunigan, and Benjamin not desiring to take the case if Fogarty was adversely interested, asked the latter as to the relation between him and Dunigan. It was the information thus received which the trial court excluded. That which the statute protects is a confidential communication of a client to his attorney. There is here no suggestion that the information thus given was of such confidential nature. While Benjamin had been the attorney for Fogarty in numerous matters, and possibly was at that time his attorney in others still pending, the record shows that he was not retained generally by Fogarty to act for him in all matters, but that the several cases taken by him represented several employments, and according to the attorney's explanation his reason for seeking the information was because he did not wish to sue one who was his client, even though he might have the legal right so to do. He was not employed or consulted by Fogarty with respect to the case of *Harris v. Dunigan.* There was nothing whatever to indicate that the information thus imparted had any reference to any other matter in which Benjamin had been, or was then, counsel for Fogarty, and the mere fact that Benjamin and Fogarty held the relation of attorney and client with reference to other isolated cases would not make the statute applicable to all their conversations and communications. Looking at the record before us, we think it clear that the relation of attorney and client did not exist, or at least is not shown to have existed, between these parties with reference to the matters then under consideration, and it does not appear that the conversation related in any degree to the rights or interest of Fogarty in other matters in which Benjamin was acting as his attorney. As bearing out the view of the law we have here expressed, see *State v. Mewherter,* 46 Iowa, 88; *Reinhart v. Johnson,* 62 Iowa, 155; *Carroll v. Sprague,*

59 Cal. 655; *Lynde v. McGregor,* 95 Mass. 172; *Hatton v. Robinson,* 31 Mass. 416 (25 Am. Dec. 415); *Granger v. Warrington,* 8 Ill. 308; *Romberg v. Hughes,* 18 Neb. 579 (26 N. W. 351); *Flack v. Neill,* 26 Tex. 273; *Earle v. Grout,* 46 Vt. 113; *Wilson v. Godlove,* 34 Mo. 337.

In the *Granger* case, *supra,* the Illinois court states the rule thus: "The relation of client and attorney must exist. The party must consult the attorney in a matter in which his private interest is concerned and make his statements to him with a view to enable the attorney correctly to understand his cause, so he may manage it with greater skill, or, if legal advice only is wanted, to enable the attorney the better to counsel him as to his legal rights." Under no construction of this rule can it be said that the evidence excluded in this case was privileged. It should also be remembered, where the objection of privilege is raised and, the record already made does not clearly disclose the alleged confidential relation, the burden is upon the objector to show it. It is not for the interrogator or witness to negative it. *Mowell v. Van Buren,* 77 Hun, 569, [28 N. Y. Supp. 1035]. This not having been done, the objection to the testimony should have been overruled. Other objections to testimony were sustained, and exceptions preserved where the matter ruled out was subsequently admitted, and the error, if any, in such rulings was thereby cured. What we have already said will serve as a sufficient guide with respect to this testimony in the event of retrial.

IV. When nearing the close of the trial plaintiff offered an amendment to his petition, alleging a conspiracy between Fogarty, Dunigan and Hoey to defraud him by the sale of worthless trees, but upon objection by the defendant the court refused to permit the amendment. In view of the fact that the proposed amendment would effect a radical change in the issues, and was offered so late in the progress

7. PLEADINGS: amendment: discretion.

of the case, the court did not abuse its discretion in the ruling complained of.

At about the same time the plaintiff filed a reply to the defendant's answer, alleging that Fogarty had supplied Dunigan and Guthrie with rubber stamps to be used in 8. PLEADINGS: attaching the name of Rice and of Fogarty reply. to tree contracts, and had ratified the acts of said agents in taking said orders from the appellant, and had acted upon the same as if directed to him, whereby he and his administratrix are estopped to deny or repudiate the authority of said agents in the premises. This reply was upon motion of the defendant stricken from the files. In this there was error, unless we say, as possibly we might, that all of the matter so pleaded was provable under the issues already joined. But in any event the reply alleged nothing in support of which there was not some evidence, and served only to make the pleadings conform to the proof offered, and to the theory upon which the trial had apparently been conducted. Because of the errors hereinbefore pointed out a new trial must be ordered.

In disposing of the matter of costs we may say that objection is raised to appellant's brief because of its failure to conform with our rules covering the preparation 9. APPEAL: cost. of such documents. While we have not thought it is so defective as to justify us in striking it, we must say that it evinces a carelessness in preparation which we can not approve. For instance, counsel relies upon very numerous alleged errors of the trial court in sustaining or overruling objections to the testimony of witnesses, but in each instance no reference to the record is given, except by stating the name of the witness, without noting the page or line of the abstract. Again, while printing marginal numbers of the lines in his brief, where they are of comparatively little help, they are wholly omitted from the abstract, where, if made proper use of

by counsel in their briefs, they are of great assistance to the court. In view of this fact the clerk will tax no costs against appellee for the printing of appellant's brief. Other costs will be paid by the appellee.

For the reasons stated the judgment of the district court is *reversed*.