ANDERSON, Respondent, v. SECURITY LAND COMPANY et al, Appellants.

(224 N. W. 937.)

(File No. 5837. Opinion filed April 13, 1929.)

*Teigen & Davis,* of Sioux Falls, for Appellant.
*Krause & Krause,* of Dell Rapids, for Respondent.

BROWN, J. At the times material to this action Security Land Company was a corporation with headquarters at Sioux Falls, defendant Engebretson its president, defendant Lindgren its vice president, and one George Thompson, its secretary.

Defendants were interested in land in Dickey county, N. D., and in the fall of 1919 and spring of 1920 Lindgren tried to interest plaintiff in the purchase of some land there. In June, 1920, Engebretson and Lindgren took a party, of which plaintiff was one, to look at land in Dickey county, and as a result plaintiff made a contract to buy the N. ½ 27—132—62, containing 320 acres. Shortly after plaintiff's return to his home on his farm in Minnehaha county, Lindgren came out to the farm with a contract written up for the purchase by plaintiff of the W. ½ 35—132—63 and stated to him that they were unable to get title for the N. ½ 27, but that he and Engebretson had just bought the W. ½ 35; that they had paid $75 an acre for it and would let him have it for just the price they paid for it, seeing they were unable to deliver

the N. ½ 27. Plaintiff says he had never seen the W. ½ 35, but, relying on defendant's representation that they had paid $75 an acre for it, he believed it would be worth that, and thereupon signed the contract which Lindgren had brought out, by the terms of which plaintiff agreed to buy from Security Land Company the W. ½ 35, containing 320 acres, for $24,000, $1,000 to be paid in cash, another $1,000 August 15th, $4,400 on March 1, 1921, and $17,600 March 1, 1926; a note secured by mortgage to be given for the last payment. This contract was signed in the name of the Security Land Company by Lindgren as vice president. Anderson testified that he asked Lindgren why it should not also be signed by Engebretson, and that Lindgren replied that that made no difference; he and Engebretson owned the land in partnership and Security Land Company was the name they did business in. The $1,000 cash payment was made, and on August 15th Engebretson and Lindgren came out to plaintiff's farm to get the second payment of $1,000. Plaintiff and his wife both testified that at that time plaintiff told them that he had received letters from the lawyers examining the title, to the effect that the title to the land was not in their name, but they said it was and they would give a clear title to it, that they would have the title made good before the March 1st payment of $4,400 came due, and as a result of this conversation plaintiff paid the second $1,000.

Various objections were made to the title by attorneys for plaintiff, and plaintiff got information that defendants had not paid as much as $75 an acre for the land, so the $4,400 payment was never made, and in December, 1921, Security Land Company commenced an action against Anderson in the district court of Dickey county, N. D.; to foreclose his interest in the land, in which action judgment by default was entered on March 22, 1922, adjudging that the contract of plaintiff for the purchase of the land "is in all things foreclosed, cancelled and determined, and all right, title and interest of the defendant, Edwin A. Anderson, in and to the said premises be and is hereby foreclosed and cut off and the title to said premises is hereby quieted in the plaintiff as against the defendant and his assigns and they and each of them are hereby enjoined from setting up any claim to said property or any part thereof." On November 17, 1921, plaintiff gave defendants written notice of rescission of the contract on the ground of

false representations made to him as to the price they had paid for the land, and because defendants had no title to convey, and demanded the return of the $2,000 paid by him, which notice being disregarded by defendants, the present action was commenced to recover the $2,000 paid, on the ground that plaintiff had been induced to enter into the contract by the fraudulent representations of defendants that they were letting him have the land at the same price they had just paid for it, and on the further ground that defendants never had title to the land and could not convey it. From judgment on a verdict in favor of plaintiffs and an order denying a new trial, defendants Engebretson and Lindgren appeal.

■ Defendants' assignment of error on the refusal of the court, at the commencement of the trial, to require plaintiff to elect whether he would proceed on the cause of action based on rescission on the ground of fraud, or on the cause of action based on the failure of defendants to perform the terms of the contract, cannot be sustained. There is no inconsistency in plaintiff's action on the ground of fraud, and also on the ground of failure to furnish title. His right of rescission may be sustained on either ground, and he was at liberty to proceed upon either or both, and the court rightly refused to require an election.

■ Defendants contend that the written contract was with Security Land Company, which is a corporation, and that the defendants Engebretson and Lindgren cannot be made personally liable. Both plaintiff and his wife testified that when the contract was made Lindgren represented that the land was owned by him and Engebretson; that Security Land Company was only a name that they did business in; that when the August payment was due both Engebretson and Lindgren came out and stated that the land was in their name, that they had bought it, and they would give a clear title to it by the time that the March, 1921, payment was due, and, referring to the stamped signature of Security Land Company on the contract, said that was "the way they signed their contracts; that they were in company, Engebretson and Lindgren." "When persons hold themselves out as partners in a particular business and thereby induce others to deal with them in that capacity, it is no defense to actions brought against them by such others, that there is no partnership between them." 30 Cyc. 390. There is evidence that when getting the money from plaintiff both

Engebretson and Lindgren represented that they held the land in partnership and were selling to him in that capacity, and that they used the name Security Land Company as the way in which they signed their contracts. It is true that Engebretson and Lindgren denied this, but that only raised an issue for the jury, which has determined it in favor of plaintiff. A plaintiff may establish liability against defendants as partners "by evidence of representations, conduct and circumstances which are naturally calculated to beget the belief that defendants were partners." 30 Cyc. 416.

The record indicates that Engebretson and Lindgren were the active managers of the business carried on in the name of Security Land Company; Thompson was secretary, but does not appear to have done much of the business. It does not appear what the capital stock of the corporation was, nor whether any one other than these three had any stock in it. In Swartz v. Burr, 43 Cal. App. 442, 185 P. 411, the court says: "The law is not scrupulously particular in discriminating between the contracts of one who owns practically all the stock of a corporation and controls its affairs, as to whether he executes a contract relating to the corporate business in his individual or in the corporate capacity." And holds that parol evidence is admissible to show a contract in the individual names of officers of the corporation is, in fact, the contract of the corporation. See, also, to the same effect, Fountain v. West Lumber Co., 161 N. C. 35, 76 S. E. 533. A party cannot conduct his business by making contracts in an assumed name or in the name of another, and then avoid the obligations by invoking the parol evidence rule to exclude proof of his true relations to the transaction. Moyers v. Fogarty, 140 Iowa 701, 119 N. W. 159.

The representation that they had just bought the land and paid $75 an acre for it, and since they were unable to deliver the N. ½ 27 as they had agreed they would let plaintiff have the W. ½ 35 for just what they paid for it, was a material representation, and, if untrue, plaintiff had a right, on discovering its falsity, to rescind the contract and recover the money he had paid under it. 26 C. J. 1266.

In Beare v. Wright, 14 N. D. 26, 103 N. W. 632, 69 L. R. A. 409, 8 Ann. Cas. 1057, it is said that in the absence of special circumstances showing a fiduciary relation between the parties or other circumstances giving rise to an implied agreement that

the price paid by the vendor should be the price paid by the plaintiff, a mere false statement as to the price paid by the vendor is not actionable deceit. But in the case at bar the special circumstances referred to by the North Dakota court exist. Here there was not merely an implied agreement but an express agreement that the price paid by the vendor should be the price to the plaintiff.

The contract was entered into in June, 1920, and contained a clause that if title to the premises is not good and cannot be made good within one year from the date when the first deferred payment shall become due, the $2,000 which had been paid should be refunded, but "if the title to said premises is then good in the name of the grantor and abstract is submitted showing same, and said purchaser then refuses to accept the same, said $2,000 shall be retained by Security Land Company as liquidated damages."

The first deferred payment was due August 15, 1920. Neither on August 15, 1921, nor at any time since, has title to the premises been good in the name of the grantor, either Security Land Company, Engebretson, or Lindgren. If defendants had no title to the land, and they had none not even at the time of the trial, they cannot retain the money paid. "A vendor is not entitled to forfeit the contract for default in the payment of the purchase money unless at the time of the default he is able to make a conveyance in accordance with the terms of the contract." 39 Cyc. 1375. Defendants could not at any time have enforced specific performance of the contract because none of them at any time have had any title to the land. The contract was to convey or cause to be conveyed to plaintiff by warranty deed the land described, and this required them to tender or be able to tender a deed executed by themselves and containing their own covenants. They could not perform their part of the contract by offering the deed of A. A. Moore or of any other third party. Gaar v. Lockridge, 9 Ind. 92; Miner v. Hilton, 15 App. Div. 55, 44 N. Y. S. 155; Weitzel v. Leyson, 23 S. D. 367, 121 N. W. 868. Plaintiff had a right to rescind on the ground that defendants could not, either at the end of the year from the time of the first deferred payment, or at any other time, give him such a conveyance as was called for by the contract. And since defendants were unable

to perform, tender of performance by the purchaser was not necessary in order to enable him to rescind. 39 Cyc. 1422.

The judgment of the North Dakota court is not res judicata as to anything involved in this case. Plaintiff in that case made no claim that it had performed, or could perform, the contract on its part, and that judgment did not determine anything whatever as to the rights of the parties except that the contract was canceled and terminated and all rights of defendant Anderson in and to the land cut off. Neither the complaint nor the judgment had anything whatever to say about the $2,000 Anderson had paid, or whether he was entitled to have it refunded. Defendant in that action was a nonresident, service was by publication, and he made no appearance. No judgment in personam could be given against him, and no such judgment was attempted to be given. His right to recover payments he had made was neither involved nor adjudicated in that action. Heilig v. Parlin, 134 Cal. 99, 66 P. 186.

Judgment and order affirmed.

SHERWOOD, P. J., and POLLEY, J., concur.

CAMPBELL and BURCH, JJ. (dissenting). An opinion was originally written in this case by Commissioner Miser reversing the judgment and order appealed from, which opinion at one time had the approval of a majority of the judges, We thought, and still think, that the opinion as prepared by Commissioner Miser should prevail, and with his consent we have adopted the opinion written by him as an expression of our views and here set the same out as a dissenting opinion as follows:

"Miser, C. This is an action brought by respondent against Security Land Company, Martin Engebretson, and O. F. Lindgren. Engebretson and Lindgren, who were respectively president and vice president of Security Land Company, appeal from the judgment recovered against themselves individually and from the order denying their motion for a new trial. The defendant company does not appeal from the judgment against the company alone on plaintiffs second cause of action. Consequently, this opinion deals only with what purports to be plaintiff's first cause of action.

"The first question presented involves the nature of that cause of action. Plaintiff alleges that Security Land Company is a South Dakota corporation; that in June, 1920, the defendants, for

the purpose of inducing plaintiff to contract to buy 320 acres of land in Dickey county, N. D., falsely and fraudulently represented to the plaintiff that they, the defendants, were the owners of said land, that they had recently bought the same, paying therefor $75 per acre, and that the land was of that actual value, and that they would sell it to him for $75 per acre; that the plaintiff believed the defendants, and, relying on their statements as true, entered into a contract to purchase said land, a copy of which contract is made part of the complaint; that the defendants were not the owners of said land, but had entered into a preliminary agreement to purchase it for $50 an acre, the full market value of the land; that, before learning of the defendant's fraud and deceit, plaintiff had paid the defendants the sum of $1,000 June 8, 1920, as recited in the contract, and the sum of $1,000 August 15, 1920; that plaintiff would not have entered into the contract of purchase except for said false representations. The foregoing summarizes the first three paragraphs of the first cause of action. Paragraphs 4, 5, and 6 of the first cause of action are as follows:

"'IV. That time was expressly made of the essence of said contract, and that the said contract expressly provided as follows: "This contract is made subject to the approval of the owner of the land, and should he fail to approve same, all money paid by second party (plaintiff herein) shall be returned to him and the party of the first part thereby be released from all liability * * * And it is agreed that if the title to said premises is not good and cannot be made good within one year from date when first deferred payment shall become due, this agreement shall be void and the above sum of $2,000.00 shall be refunded."'

"'V. That said contract was not approved as so provided, and no notice of approval thereof was ever given to plaintiff. And that the title to said lands was not good and was not made good within one year from the date of the first deferred payment therein which payment was made by affiant when due and before he discovered the fraud and deceit of the defendants hereinbefore set out; but that nevertheless the defendants failed to then make good title to said lands but on the contrary the title thereto was then not good as shown by the abstract of title then furnished by defendants and examined by attorneys mutually agreed to by both plaintiff and defendants, and as then conceded by the defendants.

That notwithstanding such failure on defendants' part the plaintiff waited a reasonable time thereafter for defendants to make such title good, and so waited until he thereupon discovered the fraud and deceit by defendants practiced upon him as hereinbefore set out, before he rescinded the said contract. That plaintiff did not learn of the falsity of defendants' said representation as to the price they had paid for said land and also as to the value of said land until in the fall of the year 1921, and that upon the learning thereof he rescinded the said contract for said fraud and also for defendants' failure to make and show good title within the time so specified in the said contract, by serving written notice upon the defendants at their office in the City of Sioux Falls, and then and there offering to convey all interest in said land that might have accrued to him under the said contract to the defendants or such parties or party as they might designate, and then and there demanded the re-payment of the sum of $2,000.00 which he had so paid defendants under said contract before discovering said fraud.'

" 'VI. That the defendants thereupon acquiesced in the cancellation and rescission of the said contract, but have ever since failed to re-pay plaintiff the amount which he had so paid to them under the said contract, to-wit, the sum of $1,000.00 paid them in June, 1920, and $1,000.00 paid them August 15, 1920. * * * Wherefore, plaintiff demands judgment against the defendants for the sum of $1,000.00 together with interest thereon from July 1, 1920, and for the sum of $1,000.00 together with interest from August 15, 1920.'

"The copy of the contract attached to the complaint recites that Security Land Company, a corporation, of Sioux Falls, S. D., 'has this day sold and agrees to convey, or cause to be conveyed, to the said second party (respondent herein) for the sum of $24,-000.00 on terms as follows: $1,000.00 in hand paid at the time of the execution of this contract, and $1,000.00 August 15th, 1920, $4,400.00 March 1st, 1921, $17,600.00 March 1st, 1926,' the premises described in the complaint. It contains the clause set out in paragraph 4 of the complaint, as well as a provision that the contract was made subject to the approval of the owner of the land.

"Is plaintiff suing in tort for deceit; or, having waived his action in tort and rescinded the contract, is he now suing in

assumpsit for the money which he paid on the contract; or is he standing on the contract and seeking to recover the $2,000 by virtue of the clause contained in paragraph 4 of plaintiff's complaint? Defendants sought to discover the theory upon which the suit was brought by a motion, made at the outset of the trial, 'to require the plaintiff to elect whether he will proceed on the cause of action based on a rescission of the contract on the ground of fraud, or whether he will proceed on the cause of action based on the failure of the defendants to perform and fulfill the terms and conditions of the contract.' This motion was denied, and its denial made the basis of assignment No. 1.

"Although the plaintiff was not then nor at any time required to apprise opposing counsel and the court of the theory on which his action was predicated, when defendant was introducing evidence in support of its defense, counsel for the plaintiff, in making an objection, stated: 'That the plaintiff's action in the case at bar is an action in debt, as for money had and received, which, in good conscience, the defendants in this action should repay—they not being parties to the North Dakota action.' But whether the cause of action was one ex contractu or ex delicto (39 Cyc. 1999), whether it was based upon an affirmance or a disaffirmance of the contract (Cheney v. Dickinson [C. C. A.] 172 F. 109, 110, 111, 28 L. R. A. [N. S.] 359; Bauer v. Nat., etc., Co., 51 N. D. 1, 198 N. W. 546, 547, 548; Union Nat. Bank v. Mailloux, 27 S. D. 543, 551, 132 N. W. 168), whether plaintiff should or should not have been required to elect (Rokusek v. Nat. Union Fire Ins. Co., 50 N. D. 123, 195 N. W. 300, 304; 13 C. J. 611), the statement of counsel and the nature of the proof introduced leave no doubt that the relief he seeks is to recover the money paid by him whether this be by affirming the contract or by repudiating the contract or both.

"The jury were instructed over defendants' objections as follows: 'If you find from the evidence that the defendants, Lindgren and Engebretson, knowingly represented to the plaintiff that they had bought the land in question for $75.00 per acre, and were the owners thereof, and that they would sell the land to him for $75.00 per acre, the same as they had paid for it, and that said representations were false, and that they made said representations with intent to deceive the plaintiff and induce him to enter into a contract for the purchase of the half-section of land in North Dakota,

and that the plaintiff relied on said representations and entered into a contract for the purchase of said land at $75.00 per acre, and paid the two thousand dollars thereon, and but for said representations would not have entered into the contract in question and paid said two thousand dollars, and that plaintiff had not seen or examined the land in question, but relied upon the statements of the said Lindgren and Engebretson as to the ownership of the land and what had been paid for the same, and not upon his own judgment, then said contract and two thousand dollars was obtained from the plaintiff by fraud, and the plaintiff would be entitled to recover from the defendants, Lindgren and Engebretson, the said two thousand dollars paid on the contract and interest thereon at seven per cent.'

"This instruction utterly ignores the fact that the evidence does not show that defendant Engebretson received any of the first $1,000, was present when it was paid, or said anything to induce its payment; it ignores the admitted fact that Security Land Company was a corporation, that the contract admitted in evidence recited an agreement by the company to sell and a receipt by the company of $1,000; that the notice of rescission admitted in evidence was directed to Security Land Company, and demanded of it the repayment of the $2,000 paid by plaintiff and the return of his notes; it ignores the question of whether defendants were the agents of the company in receiving the money or whether they were the agents of a disclosed or an undisclosed principal. It assumes as true that appellants—Engebretson and Lindgren—and not their codefendant, the company, were the parties from whom respondent purchased the property and were the parties to whom the consideration was paid.

"In our opinion, this instruction was highly prejudicial. If this be a suit to recover, after repudiation, the consideration paid, then the consideration should be recovered from the person from whom the property was purchased and to whom the consideration was paid. Upon this point, the Circuit Court of Appeals, Seventh Circuit, in Cheney v. Dickinson, 172 F. 109, 110, states the rule to be as follows: 'A person who finds that he has parted with his money through being fraudulently led into a purchase may pursue either one of two remedies at law. He may repudiate the purchase, surrender the property to the vendor, and recover the

consideration. *Such an action manifestly can be maintained only against the party from whom he purchased the property and to whom (or to whose order) he paid the consideration.* Or he may affirm and abide by the purchase, retain the property, and recover the difference between what he paid and the value of what he received and is retaining. Such an action can be maintained against any one (vendor or third party, indifferently) who intentionally deceived the plaintiff into making the purchase. In such an action it is immaterial whether the defendant did or did not receive the consideration or other benefit, because the gravamen of the action is that the plaintiff has been deceived to his injury, not that the defendant has profited by the transaction. The difference between the two actions is not merely technical; in substance they are as far apart as affirmance and repudiation. Wilson v. New U. S. Cattle Ranch Co., 73 F. 994, 20 C. C. A. 244; Kingman v. Stoddard, 85 F. 740, 29 C. C. A. 413; Simon v. Goodyear Co., 105 F. 573, 44 C. C. A. 612, 52 L. R. A. 745; Westerfeld v. N. Y. Life Ins. Co., 129 Cal. 68, 58 P. 92, 61 P. 667.'

"If it be contended that this was a simple action in tort for deceit, and that therefore the instruction was proper, then appellants were entitled to have been so advised at the opening of the trial. Not only would it have permitted the exclusion of much testimony, but, if that was the nature of the cause of action, there was some evidence to justify interposing the defense of waiver; for, although plaintiff pleaded and on direct examination testified that he first discovered in the fall of 1921 the falsity of appellants' representations as to the price, and although he testified that he did not discover until the fall of 1921 that one Moore, and not defendants, owned the land, he admitted on cross examination that he heard in March, 1921, that they had paid $56 per acre and was not advised until after beginning suit that the contract between Moore and the company called for a consideration of $67.50 per acre; despite the fact that, on March 18, 1921, he wrote a post card to a third person stating that he did not intend to go through with the deal, the first notice he gave to appellants of any intention to rescind on that ground was in the notice of November 17, 1921; and, during the intervening eight months, his counsel had three times examined the abstracts of title, finding the title to one quarter section good in Moore and making objections to the title to

the other quarter section also found to be in Moore; after each of which opinions of respondent's counsel efforts were made by defendants to meet respondent's demands, all of which were more consistent with affirmance of the contract than with repudiation thereof. It cannot be contended that the verdict obtained was based upon an affirmance of the contract and recovery under its terms; for, although a mass of testimony was introduced thereon, no instruction was given to the jury upon such a theory.

"We therefore conclude that, if respondent's cause of action is one in which the vendee, fraudulently led into a purchase, has repudiated the purchase, and brings this action to recover the consideration paid, the instruction hereinbefore quoted did not fairly present the issue to the jury, in assuming that those defendants who are appellants herein received the consideration; that, if the nature of plaintiff's cause of action was not as last above stated, the theory upon which it was predicated was so uncertain and mixed that the refusal of the court to grant the motion of appellants at the opening of the trial was prejudicial error. In either event, the judgment and order appealed from must be and are reversed."