SULLIVAN & SULLIVAN, Appellants, v. JAMES O'CALLAGHAN, Appellee.

PAYMENT: Requisites and Sufficiency—Absolute Transfer of Property—Presumption.   An instrument in the form of an absolute assignment and sale of property by the grantor, in consideration of services performed and to be performed by grantee, carries no inherent presumption that it was intended simply to act *as security* for the payment of grantee's claims.   On the contrary, *payment* is implied on the face of such an instrument.

EVIDENCE: Presumptions—Absolute Sales as Security— Right to Rebut.   Concede, *arguendo*, that a sale of property by grantor, in consideration of services performed and to be performed by grantee, is attended by an inherent presumption that the instrument was only intended as security for grantee's claims, yet such presumption is rebuttable by the grantor.

ATTORNEY AND CLIENT: Compensation—Authorized Adjustment by Associate Counsel—Effect.   An attorney who authorizes his associate counsel to secure from their client an assignment to them of certain property, in order to adjust their fees for services, is bound by the act of such counsel in accepting the assignment as *full payment*, especially when such attorney lodges no objection against the form of the assignment until long after the services were rendered.

PRINCIPAL AND AGENT: Powers of Agent—Unauthorized Acts—Ratification.   A principal who sues upon an instrument procured for him by an agent, thereby ratifies the agreements which the agent made in obtaining such instrument, even though it be conceded that such agreements were in excess of the agent's authority.

*Appeal from Des Moines Municipal Court.*—ESKIL C. CARL-SON, Judge.

JANUARY 19, 1918.

ACTION at law to recover for services rendered in defendant's behalf. There was a trial to the court, and judgment for defendant. Plaintiffs appeal.—*Affirmed.*

*Sullivan & Sullivan, pro se,* and *Vernon R. Seeburger* and *Dale & Harvison,* for appellants.

*Miller & Wallingford,* for appellee.

WEAVER, J.—The circumstances out of which this litigation arises are, in substance, as follows: Prior to October 30, 1911, the defendant herein had been indicted in the district court of Polk County, Iowa, upon a charge of burglary. At his solicitation, or that of his brother, Bob O'Callaghan, there were employed or associated in his defense the law firms of Parsons & Mills, Sullivan & Sullivan, and Walter McHenry, all being practicing attorneys in the city of Des Moines. There had been one mistrial of the case, and it was again called for another trial to a jury. At that time, the only property or means of any financial value owned by the defendant was an interest in the unsettled estate of his deceased father. A consultation was had between defendant's counsel upon the subject of their fees, and it was determined that, before proceeding further, the matter of compensation for their services should be definitely adjusted in some manner. All of these attorneys understood that defendant's interest in his father's estate was his only resource from which he could pay or secure their claims. It appears to have been agreed between them that the aggregate sum to be demanded by these three firms should be $3,300, and it was left to Walter McHenry to see the defendant and secure from him an assignment to that amount of his share in his father's estate. The only apparent disagreement between counsel at this point, when testifying as witnesses on the trial of the

*Marginal note:* 1. PAYMENT: requisites and sufficiency: absolute transfer of property: presumption.

present case, is that Jerry Sullivan, who represented his firm at that consultation, says that, according to his understanding, such assignment was to be obtained, not as payment for their services, but as mere security for payment to be made in the future.   On the other hand, Walter McHenry, who was the active agent in obtaining the paper, is quite clear that the assignment which he was authorized to secure was to be absolute, and received as payment. , Mr. Parsons (who represented his firm) is confused in his memory of the circumstances, but so far as he does become definite in his statement, it tends to corroborate McHenry. Mr. McHenry, acting for himself and his fellow counsel in the case, did go to the defendant, and, after some negotiation with him, obtained a written assignment in the following form: ✓

"For and in consideration of legal services hereinbefore rendered, and to be rendered, by Parsons & Mills, Sullivan & Sullivan and Walter McHenry, all of Des Moines, Iowa, in the criminal case of the State of Iowa vs. James O'Callaghan, the undersigned, now pending in the district court of Polk County, Iowa, I do hereby sell, assign, transfer and set over to the said parties hereinbefore mentioned, all my interest of every kind and character in the estate of James O'Callaghan, as provided for me in the will of the said James O'Callaghan, probated on the 17th day of August, 1907, and now of record in Will Record No. 8, on page 313 of the probate records of Polk County, Iowa, to the amount of Thirty-three Hundred Dollars.   And I do hereby authorize and direct Mrs. George E. Martin, of Aurora, Ill., who is the executrix of the said estate, to make payments to the parties hereinbefore mentioned of my interest in the said estate as the same may become due and payable.

(Signed) "JAMES O'CALLAGHAN."

The assignment was duly acknowledged, and a copy of it sent to the executrix of the estate of defendant's father.

With the writing thus obtained, McHenry returned to his associate counsel and exhibited it to them, and the trial of the criminal case proceeded to its conclusion. The defendant was convicted, and an appeal prosecuted to this court, where he was represented by the same counsel. Shortly after the services were rendered, McHenry transferred his interest in the assignment to Bob O'Callaghan, as did also Mr. Parsons, of the firm of Parsons & Mills. So far as the claim of Sullivan & Sullivan was concerned, the matter seems to have been overlooked by them, until shortly before this action was begun, in 1916, when information came to the Sullivans that the assignment had been transferred by Bob O'Callaghan to the Home Savings Bank of Des Moines. On investigation, it was found that the assignment was not in the condition and form in which it had been procured from James O'Callaghan by McHenry, the names of Sullivan & Sullivan having been erased therefrom. It is not claimed, however, that defendant is chargeable with the spoliation of the instrument; and, for the purposes of this case, it is not material by whom it was done, except to say it was not done with the knowledge or consent of these plaintiffs. This action is brought by Sullivan & Sullivan, on the theory that the assignment was intended as a matter of security only, and that defendant is justly indebted to them for the services rendered in his behalf.

The defendant's answer, briefly stated, is that the assignment was made by him and received by the plaintiffs and their associate counsel in the criminal case as payment in full for their services.

The cause was tried to the court without a jury, and judgment rendered in favor of defendant.

To some extent, the material testimony has already been stated. In addition, it may be said that the defendant testifies very positively that the assignment was intended to be absolute, and was made in payment for the plaintiffs'

services rendered and to be rendered. He further states that, at the time of the assignment, his interest in his father's estate was sufficient to cover the sum of $3,300, and that the same has been paid, and charged to him by the executrix. It is not claimed, however, that any payment has been made by the executrix to the plaintiffs. So far as shown, plaintiffs at no time demanded payment of fees from defendant after the assignment was executed, until about the time this action was begun, nearly five years later. Walter McHenry's testimony is in direct line with that of the defendant; and, as they are the only two persons who have actual personal knowledge of the agreement and understanding upon which the assignment was given, and as the paper itself is drawn in the form of an absolute and unqualified transfer of defendant's right in his father's estate to the extent of $3,300, it must, in the absence of other evidence, be presumed to mean exactly what it says, and it would seem to be indisputable that this evidence affords sufficient support for the trial court's finding on this issue. This action is at law, and the trial court's finding is to be accorded the force and effect of a verdict of a jury, unless we can say that the record is barren of evidence to justify it; and this, it is quite plain, cannot be done under the showing made.

Counsel for appellants have, with much 2. EVIDENCE: industry, collated authorities to the effect presumptions: absolute sales that payment made by check or by order or as security: right to rebut. by promissory note or by transfer of the promissory note or check of a third person is, in the absence of any express or implied agreement to the contrary, considered to be conditional or tentative payment only, and that, unless such paper is honored upon presentation or demand, recourse may be had upon the original debtor. The soundness of the rule so relied upon need not here be questioned, for the case presented by this record

does not call for its application. The instrument in this
case is not a mere order upon a third person; it is not the
check or promissory note of the debtor or of any third per-
son; it is, in form at least, a written sale or transfer of
property or property right; and, even if it could be held
subject to the presumption for which appellants contended,—
that it was no more than conditional payment or security,—
the presumption would still be open to rebuttal by defend-
ant; and, upon superior proof that it was intended to evi-
dence an absolute assignment, and to be received as pay-
ment of the fees earned and to be earned by the plaintiffs
and their associates, the court and jury would be bound to
give it the effect so indicated. The effect of the presump-
tion, if it existed, would be no more than determination
of the burden of proof; and, as there is unquestionably tes-
timony of the character mentioned, the finding of the court
would still be conclusive upon appeal.

There is another aspect of the case
3. ATTORNEY AND   which appears to us quite conclusive of the
   CLIENT: com-
   pensation:      correctness of the judgment below. It may
   authorized
   adjustment by   be conceded, and indeed will be taken for
   associate
   counsel: effect.   granted, that Mr. Sullivan is perfectly can-
did in saying that, according to his understanding, the as-
signment was intended as a matter of security only; but this
alone is insufficient to sustain the demand for a recovery
in this action. It was concededly the agreement between
plaintiffs and their associates in the defendant's case that
Walter McHenry should be delegated to see the defendant
and obtain from him some sort of instrument by which his
interest in his father's estate to the amount of $3,300 should
either be pledged or assigned for the payment of counsel
fees. McHenry's authority to treat with defendant on
some terms is not denied. Mr. Sullivan says:

"Mr. McHenry said he would get the assignment, and
we said it was all right, to get it. I knew McHenry was

going to get it if he could, because we talked over what we'd get as security for our fees. Whatever McHenry did at that time was embodied in that agreement. Later, he produced the assignment, or agreement. Nobody raised any question as to the form of the instrument."

McHenry says of the conversation between counsel:

"It was decided that, inasmuch as Jimmie had no property except his interest in this estate, we should get an assignment of that estate for the attorney fees. After that, the amount was discussed, and it was left to me to draw up the assignment and procure his signature to it, and I did that."

Mr. Parsons says:

"I was not present when McHenry got the assignment. Jerry [Sullivan] and I told him to look after getting it."

This is sufficient to indicate that McHenry was empowered to deal with defendant, and that defendant was justified in dealing with him, not only in McHenry's own behalf, but also in behalf of McHenry's associates. Plaintiffs concede that McHenry reported back to his associate counsel and exhibited the assignment procured by him, and that no objection was raised thereto by anyone.

4. PRINCIPAL AND AGENT: powers of agent: unauthorized acts: ratification.

Counsel for appellants contend, notwithstanding this state of the testimony, that they are in no manner bound by the action or agreement of McHenry. They say that, while the agreement with McHenry to accept the assignment as payment is doubtless binding upon him, it is in no manner binding upon them, because McHenry was not authorized by them to make such an agreement. And because of this fact, they argue, they are entitled to have the paper read and construed without any reference to the agreement with McHenry. This position cannot successfully be maintained. McHenry was either their agent or he was not their agent. If he was not their

agent, and they had acted promptly when the assignment was reported to them, they could have repudiated his action, and the contract would have been unenforceable. If he was their agent to procure an assignment, they will necessarily be bound by his agreement, unless, for good reason, they promptly disavow his action. They cannot ratify such part of the agreement as they think of advantage to them and repudiate the rest. It is not necessary to show a previous grant of authority to the agent, where the principal adopts the contract and proceeds to its performance or enforcement. *Kimball Bros. Co. v. Citizens Gas Co.*, 141 Iowa 632; *Chamberlain v. Brown*, 141 Iowa 540, 543; *Moyer v. Fogarty*, 140 Iowa 701, 711; *Cameron v. Mut. L & T. Co.*, 121 Iowa 477; *Farrar & Wheeler v. Peterson*, 52 Iowa 420. Plaintiffs sue upon the instrument which McHenry procured, and, upon familiar principles, will be held bound by McHenry's agreements, made in connection with its procurement. The agreement to take the assignment as payment was, we think, within the apparent scope of the authority given to McHenry, even upon the record as made by plaintiffs; and if they did so agree, of which there is very considerable testimony, plaintiffs have now no right of action against the defendant.

Were this assignment made solely in consideration of a debt already contracted, the position of the defendant would be more vulnerable; but it expressly provides that, in part at least, the assignment was in consideration of services to be thereafter performed. No presumption can arise, under such circumstances, that the assignment was intended to be conditional only.

Something is said in argument in question of some of the legal conclusions stated in a written opinion filed by the trial judge. We shall not undertake their review. It is enough that the record as a whole indicates that the judgment rendered was correct, and it is not material

whether the reasons and conclusions stated by the court are or are not in all respects invulnerable to criticism.

There being no reversible error shown, the judgment appealed from is—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.