H. E. KELLY, Appellee, v. HARRY SIGISMUND, Appellant.

No. 46066.

DECEMBER 15, 1942.

Ferguson & Ferguson, of Shenandoah, for appellant.

Wilson & Wilson, of Shenandoah, for appellee.

MITCHELL, J.— On the 18th day of March 1941, H. E. Kelly as plaintiff filed in the district court of Page county, Iowa, his petition at law, in which he alleged that on the 17th day of July 1940, he sold and delivered to the defendant Harry Sigismund 69 hogs at the agreed price of $619.20. He alleges that he has not been paid the purchase price, that demand has been made, and asks judgment in that amount. The defendant filed answer, division I of which denies each and every material allegation except that the defendant admits that he traded with the plaintiff for 69 head of hogs, that they were delivered to him, and that the agreed price therefor was $619.20. In division II of his answer defendant pleads that he has fully paid plaintiff for the 69 hogs delivered to him, settlement being had at the time of said sale, and that he is not indebted in any amount. Plaintiff filed a reply in which he denies that the defendant traded with the plaintiff for 69 head of hogs and denies

that they were ever paid or settled for in full. There was a trial, at which evidence was introduced. At the end of the plaintiff's testimony, a motion for directed verdict was made, which was overruled, and which was renewed at the close of all the evidence and again overruled. The jury returned a verdict for the plaintiff in the amount sued for and the defendant has appealed.

There is little dispute in this record as to the facts. As stated by the appellant in his brief and argument:

"There is no question but what the plaintiff's own testimony tells a pretty straight story about it, in so far as the question is competent."

H. E. Kelly operated a stockyard in Shenandoah known as the Wabash Stockyards. He had there 69 head of hogs for sale. On the evening of July 16, 1940, he called Mr. Harry Sigismund, who lived at Northboro, Page county, Iowa, telling him about the hogs which he had for sale. On the 17th day of July 1940, Sigismund came to the stockyards, examined the hogs. They figured up what they were worth and they agreed on the price of $619.20. They went into the office of the stockyards, Sigismund pulled out of his pocket what is referred to in places in the record as a checkbook or a pad of papers glued together. He handed the pad to Kelly who filled it out and it was signed by Sigismund. The top piece of paper of the pad was torn off and it was delivered by Sigismund to Kelly. It was introduced in the record and is known as Exhibit 1, which is as follows:

"Northboro, Iowa        July 17, 1940          No.........
          "NORTHBORO CREDIT UNION

"For value received, and subject to the by-laws of said Association I hereby assign to H. E. Kelly or order, the sum of Six Hundred Nineteen & 20/100 $619.20 Dollars of the amount of money on deposit in my account and subject to withdrawal.

                              "Harry Sigismund
                                        "Member.

"Account No. 69 hogs."

On the back thereof appears:

"H. E. Kelly

"Pay to the order of any bank, banker or trust Co. all prior endorsements guaranteed

"July 17, 1940

"THE CITY NATIONAL BANK

"72-185   Shenandoah, Iowa   72-185

"F. M. Schneider, Cashier."

Sigismund took the hogs and Kelly took the piece of paper. On the same day that it was received, Exhibit 1 was deposited in the bank at Shenandoah by Kelly and in the due course of business it reached the Northboro Credit Union at Northboro, Iowa, on the 19th day of July 1940, and while it was first marked paid, apparently it was a mistake on the part of the credit union and later they refused payment, not because Sigismund did not have money on deposit with the credit union but because the credit union did not have sufficient money on hand to pay the amount of Exhibit 1. It was returned to the Shenandoah bank where Kelly had deposited it and he was notified of the non-payment by the bank. It is his contention, and there is evidence to bear it out, that he and another party went down to see Sigismund and he told them that if he was given a week he thought he could take care of it. Payment has never been made on Exhibit 1 and this action was brought to recover the agreed price of the hogs.

We have been furnished with a very able and elaborate argument on the part of the appellant. Many interesting questions are argued involving the nature of Exhibit 1 and of the rights of a party who accepts such an instrument as Exhibit 1 as against a credit union, but, as we read this record, this case was tried in the lower court upon one theory and there is but one question involved. That is whether or not at the time the appellee accepted from the appellant the instrument known as Exhibit 1, he accepted that in full payment and settlement of the admitted debt which the appellant owed to the appellee for the 69 hogs purchased by him. The evidence shows the sale and the delivery of the instrument, Exhibit 1. There is a dispute in the evidence as to whether it was accepted

in full payment and settlement. Appellee denies that it was. He produces witnesses who bear out his story. There is evidence that appellant himself agreed to pay the instrument after payment had been refused by his credit union. True, much of this is denied by the appellant, who introduces evidence that it was accepted in full and complete payment of his obligation. This disputed fact question was for the jury. In the motion for a directed verdict, which covers approximately three pages in the abstract, the appellant sets forth as grounds for his motion that when the assignment, Exhibit 1, was accepted and received by the appellee, it was a change of ownership of his share of the deposit in the said credit union and was an assignment in fact. The evidence shows that Exhibit 1 was delivered to the appellee and accepted by him in full satisfaction of the debt and obligation. The trouble is that the evidence is in dispute in regard to the manner in which the transaction was carried on. Appellee contends, and there is evidence to support it, that he did not accept Exhibit 1 in settlement, while appellant contends that it was talked over and agreed by appellee to accept the assignment in full payment. Appellant calls to our attention the case of Gauthier v. Peiter, 267 Mich. 667, 255 N. W. 385, 93 A. L. R. 1522. A reading of that case clearly shows that it is an entirely different proposition than the one involved here, for the assignment there made was in a closed bank and the question was as to the amount of money that the respective parties were to receive under the assignment. Reliance is also placed by appellant upon the case of Sullivan & Sullivan v. O'Callaghan, 182 Iowa 755, 759, 166 N. W. 74, 75. We do not see where it is authority for the case at bar. In that case there was an assignment of an interest in an estate, and the court said:

"Counsel for appellants have, with much industry, collated authorities to the effect that payment made by check or by order or by promissory note or by transfer of the promissory note or check of a third person is, in the absence of any express or implied agreement to the contrary, considered to be conditional or tentative payment only, and that, unless such paper is honored upon presentation or demand, recourse may be had upon the original debtor. The soundness of the rule so relied upon need

not here be questioned, for the case presented by this record does not call for its application. The instrument in this case is not a mere order upon a third person; it is not the check or promissory note of the debtor or of any third person; it is, in form at least, a written sale or transfer of property or property right; and, even if it could be held subject to the presumption for which appellants contended,—that it was no more than conditional payment or security,—the presumption would still be open to rebuttal by defendant; and, upon superior proof that it was intended to evidence an absolute assignment, and to be received as payment of the fees earned and to be earned by the plaintiffs and their associates, the court and jury would.be bound to give it the effect so indicated. The effect of the presumption, if it existed, would be no more than determination of the burden of proof; and, as there is unquestionably testimony of the character mentioned, the finding of the court would still be conclusive upon appeal.''

Appellant also cites the recent case of Dultmeier Mfg. Co. v. Kulow, 230 Iowa 1224, 300 N. W. 513. But that case involves the question of a notice of the assignment, which is not involved in the case at bar. We can come to no other conclusion than that the lower court was right in overruling the motion to direct.

Appellant complains of the giving of instruction No. 7, in that the lower court failed to instruct the jury that appellee had the burden to show such nonpayment and that instruction No. 7 cast the burden on the appellant to show payment. The record shows that at the close of all the evidence, and after the overruling of the motion for a directed verdict, Mr. Ferguson, representing the appellant, stated to the court:

''I assume that I have the opening and closing, I have the burden, and the defendant requests that the defendant have the opening and closing.

''The Court: It is your contention that you have the burden of proof and therefore you are entitled to the opening and closing?

''Mr. Ferguson: Yes sir. •

''The Court: I think that is right, the defendant has the

burden of proving payment, and he has the right to the opening and closing argument and he is given the right to open and close the arguments.''

In view of the record in this case, that the appellant stated to the court that he had the burden of proving payment and by that statement receiving the advantage (if it be one) of opening and closing the argument to the jury, the giving of instruction No. 7, if it be error, was waived by the appellant. The instruction complained of sets out the theory upon which this case was tried in the lower court, which theory was joined in and admitted by the appellant. Many other questions are raised, all of which have been given careful consideration. Finding no error, it necessarily follows that this case must be, and it is,—Affirmed.

All JUSTICES concur.